THE PEOPLE v. RICHARD FOLEY, IMPLEADED WITH JOHN RYAN AND MICHAEL CONNORS.

*Robbery—Intent to commit, not shown by proof of a concerted assault.*

1. Where, on the trial of a respondent for robbery, the evidence tended to show a brutal assault by respondent and two others upon the complainant, during which his vest was torn off and a pocket-book, containing money, taken therefrom, but there was no testimony of any opportunity for, or of any conference, in fact, between respondent and his co-assailants, beyond the fact that on a sudden word of attack the assault was committed, nor of the subsequent possession by any of them of the pocket-book or money,

    *Held*, that it was error for the court to instruct the jury that it made no difference which of the assailants tore off the vest, and that they might consider with what particular intent it was done, whether for assault or robbery. That this was practically instructing them that men who combine for an assault are liable for any felony com-

mitted by one of them, whether participants in the actual felonious design or not, which is not sound law.

2. It is going beyond the province of the court to suggest how far any extent of violence indicates an intent to do more than commit violence.

Error to Marquette. (Grant, J.) Argued January 27, 1886. Decided February 3, 1886.

Information for robbery. Conviction reversed. The facts are stated in the opinion.

*E. E. Osborn*, for respondent.

*Moses Taggart*, Attorney General, for People.

CAMPBELL, C. J. Foley, who was tried separately, was convicted of robbery. Ryan, on a separate trial for the same act, was found guilty of assault and battery. Foley was sentenced to confinement in the prison at Ionia for five years at hard labor.

The facts testified to indicated that the three defendants, who lived at Negaunee, were sitting by the depot at Negaunee about eleven o'clock at night, eating sardines, when two Swedes, Erick Anderson and John Sockrene, were passing near, and by invitation came up and joined them. Suddenly, and while no unfriendly acts were done on either side, defendants jumped up with a concerted signal, and attacked both of the others with violence, and began to beat them. Sockrene ran away and escaped from the one who attacked him. Two assailed Anderson,—beat him severely, threw him down on his face, and then tore off his vest, after pulling his upper garment over his head, and, as he says, one of them took out his pocket-book, with between four and five dollars in it, while doing so, and so robbed him. Neither he nor Sockrene could identify either of the assailants as those who attacked him personally, and neither of them knew which took the money. It appeared the defendants and the Swedes were strangers to each other, and the latter, according to Sockrene,

when previously asked during their apparently friendly intercourse if they had any money, said they had none.

That a very brutal assault was committed is obvious, and was not denied; but it was claimed there was no designed or executed robbery.

The judge who tried the cause, after referring to the undisputed facts of violence, and defining robbery, said to the jury:

" It is in evidence in the case, and undisputed, that Erick Anderson had upon him a vest in which he says and claims was this money; that the money was in an inside vest pocket: that over this vest there was a knit jacket: and it is conceded by counsel and by the evidence that the vest was torn off from Erick Anderson by one of the parties, either Connors, Ryan or the respondent; and it would make no difference, so far as this is concerned, which. Now, it is for you to determine how that vest was taken off from underneath that knitted jacket. It is for you to determine, if it was taken off—and it is conceded it was—how it got off, and for what purpose it was taken off. The respondent and his comrades claim they simply made an assault—an attack—upon these parties. It is admitted they attacked them and beat them; but that it was with no intention to do any other crime than a simple assault and battery. Now, if you find the vest was stripped off from Erick Anderson from underneath this knitted jacket which he had over it—it is for you to determine for what purpose that vest was taken off from underneath the knitted jacket of Erick Anderson. In an ordinary assault and battery an undergarment would not get off in that way, and it is for you to determine how it got off, and for what purpose it was taken off."

This charge is complained of.

It appeared from Erick Anderson's testimony that the attack and stripping were made by two of the three, whom he could not identify, and that, while he was down and beaten by two, the third urged them not to strike him any more. There was no testimony of any opportunity for a conference, or of any conference in fact, before the attack, beyond the fact that on a sudden word of attack the assault was committed. There was no testimony of any knowledge of the Swedes, or that they had money, or where they kept

it.  While there was an evident concert of action in the assault, it was no more, necessarily or apparently, than exists in any gang of bullies, who may or may not be also thieves. There was no proof of subsequent possession of the pocket-book by any of the prisoners, who were themselves mining laborers earning wages.  The particular violence of tearing off the vest, while unquestionably within the responsibility of all the assailants, cannot in law be declared to have been within their specific intent, although possibly the jury might have so found as a fact.  But when it is said by the court that whoever did it made no difference, and at the same time the jury were told to consider with what particular intent it was done—whether for assault or robbery—they were practically told that men who combine for an assault are liable for any felony committed by one of them, whether participants in the actual felonious design or not, which is not sound law : *People v. Knapp,* 26 Mich. 112 ; *Nye v. People,* 35 Mich. 16.

It was in this condition of the case especially injurious to say to the jury, in effect, that from the fact that the vest was torn off something more must have been intended than a mere assault.  This was, under the circumstances, substantially telling them that there must have been a design to rob, for no other possible alternative appeared.  It is going beyond the province of the court, to suggest, how far any extent of violence indicates an intent to do more than commit violence.  It is not impossible, and experience shows is not very remarkable, for ruffians to do any kind of harm from wanton brutality, without any desire of gain, or of anything more than the gratification of their love of mischief. And while these young villains deserve no consideration, they should nevertheless not be convicted of robbery unless robbery was within their common purpose.

The judgment must be reversed, and a new trial granted. The prisoner must be remanded to the local authorities, to be dealt with as in other cases before trial.

The other Justices concurred.