### PEOPLE v. BELTON.

CRIMINAL LAW—ASSAULT WITH INTENT TO ROB—INSTRUCTIONS TO JURY—INTENT.

In a prosecution for assault with intent to rob, it is error to charge the jury that the respondent, who conducted the saloon in which the complaining witness was assaulted, and who was not shown by direct evidence to have struck the latter, or to have taken or shared in the stolen money, could be found guilty if he was aiding and abetting the assault; since it would be necessary to find also that he shared the intent to rob.

Exceptions before judgment from the recorder's court of Detroit; Phelan, J.  Submitted February 11, 1910. (Docket No. 160.)  Decided March 19, 1910.

Harry Belton was convicted of an assault with intent to rob.  Reversed.

*Philip A. McHugh* and *William Henry Gallagher,* for defendant.

*Philip T. Van Zile,* Prosecuting Attorney, and *Arthur W. Kilpatrick,* Assistant Prosecuting Attorney, for the people.

STONE, J.  The respondent and one George Stiles were jointly informed against in the recorder's court of the city of Detroit.  They were charged with having, on November 14, 1908, at the city of Detroit, made an assault, not being then and there armed with a dangerous weapon, in and upon one John Mundt, with intent the personal property, goods, and chattels of the said John Mundt then and there feloniously to rob, steal, take, and carry away.

The evidence showed that said John Mundt and a comrade by the name of Charles Beagle, on the evening of November 14th aforesaid, entered a saloon owned by the respondent Belton and his brother, to have a glass of beer. Upon entering, Beagle found some friends there, whom, with the bartender, he invited to drink with him.  Beagle claimed that he ordered five drinks, and that he tendered in payment a $2 bill.  The respondent Belton, who was a stranger to Mundt, was in the saloon at the time, standing near the end of the bar.  The evidence is not clear as to the position of the parties, but they were all near each other.  Beagle claims that he received back but $1.20 in change, and that he made some complaint to the bartender about the price charged for the drinks, whereupon he was struck down, but he does not claim to know who struck him.  Mundt was also struck down at the same time, and he does not know who hit him.  Beagle claims that he was assaulted but once, and that, when he came to, he thought the lights were turned down.  He claims that he saw six or seven men over near the stove and Mundt in the center of them, but he saw no more blows struck, and he went out of the saloon, and did not return. Mundt claims that, after he was first knocked down, he arose and saw the bartender still behind the bar, but with his shirt sleeves somewhat bloody.  He says that he commented on that fact to him, and that the bartender replied:  "Yes; and, if you don't pay the 40 cents you owe, you will never go out of here alive."  Mundt claims that he expressed a willingness to pay, and reached to his hip pocket and took out his pocketbook, when he was again

knocked down. When he came to the second time, he claims that he found the saloon deserted, and his pocket-book, containing $23, missing. Mundt does not claim to know who hit him on either occasion. One Smith testified that he saw respondent Belton fighting with somebody, but he could not say who it was. He said:

"They were fighting. There were two or three mixed up in it. Mr. Belton was fighting with just one. I did not notice anybody helping Belton. There were only two fighting; that is all I noticed. I did not know the other party that he was fighting with. I wouldn't recognize him again if I saw him."

It appears that Smith did not know either Mundt or Beagle, and cannot say that he saw either of them in the saloon that night. At the close of the testimony, the court directed a verdict of not guilty as to the respondent Stiles. The case was submitted to the jury as to the respondent Belton. He was convicted by the jury of the offense charged.

The case is before this court on exceptions before judgment. There are 18 assignments of error. We have examined all of the assignments of error and the entire record. We find no error in the conduct of the trial or the admission of evidence. We find but one error in the charge of the court, and that is raised by the 17th assignment of error.

The court had already charged the jury that, if they found that the assault was not committed by the respondent, they should acquit him. This branch of the charge was even more favorable to the respondent than he could ask. The court further charged the jury as follows:

"If you should find, gentlemen of the jury, from all the testimony submitted, that this defendant was aiding, that he was abetting, or that he was assisting some person in committing the assault upon the complaining witness John Mundt, and that the assault was committed with the intent to rob, the respondent would be guilty of the crime charged in the information, assault with intent to rob. If you are satisfied of that fact beyond a reasonable

doubt that he was aiding and abetting, because, gentlemen of the jury, the rule is supported by law, where two men agree to commit an unlawful act, and they enter upon the premises of a man for the purpose of committing the unlawful act, robbing him, and he meets with resistance, and he takes human life, the man whc is on the corner watching for him is just as guilty of the taking of that life under the law as the individual who was the direct cause of its taking."

The counsel for respondent insists that this part of the charge was erroneous under the authorities generally, which hold that the common intent must be proven to make one of two wrongdoers liable for all the acts of the other, and that the case of *People* v. *Foley*, 59 Mich. 553 (26 N. W. 699), is a parallel case, and is decisive of the question. In this contention we are constrained to hold that counsel for respondent is correct. In this case Mundt was assaulted in a saloon row in which several persons were implicated. The respondent, in whose saloon the affray occurred, and who had never before seen Mundt, was seen to strike a blow at some one during the fracas. When all was over, Mundt missed his pocketbook and money. There was no evidence of any prior common purpose upon the part of any persons in the saloon who committed the assault, nor was there any evidence of the actual taking of his pocketbook from the person of Mundt, the complaining witness. In the *Foley Case*, Foley and two companions were sitting by the depot at Negaunee, eating sardines, when two Swedes, Anderson and Sockrene, were passing by, and by invitation came up and joined them. Suddenly, and while no unfriendly acts were done on either side, Foley and his companions jumped up with a concerted signal, and attacked both of the others with violence, and began to beat them. Sockrene ran away and escaped from the one who attacked him. Two assailed Anderson, beat him severely, threw him down on his face, and then tore off his vest, after pulling his upper garment over his head, and, as he said, one of them took out his pocketbook, with between $4 and

$5 in it, while doing so, and so robbed him. Neither he nor Sockrene could identify either of the assailants as those who attacked him personally, and neither of them knew which took the money. It appeared that Foley and his comrades and the Swedes were strangers to each other. The circuit judge, after referring to the undisputed facts of violence, and defining robbery, said to the jury :

" It is the evidence in the case, and undisputed, that Erick Anderson had upon him a vest in which he says and claims was this money; that the money was in an inside pocket; that over this vest there was a knit jacket; and it is conceded by counsel and by the evidence that the vest was torn off from Erick Anderson by one of the parties, either Connors, Ryan, or the respondent, and it would make no difference, so far as this is concerned, which. Now, it is for you to determine how that vest was taken off from underneath that knitted jacket. It is for you to determine, if it was taken off—and it is conceded it was—how it got off, and for what purpose it was taken off. The respondent and his comrades claim they simply made an assault—an attack—upon these parties. It is admitted they attacked them and beat them; but that it was with no intention to do any other crime than simple assault and battery. Now, if you find the vest was stripped off from Erick Anderson from underneath this knitted jacket which he had over it, it is for you to determine for what purpose that vest was taken off from underneath the knitted jacket of Erick Anderson. In an ordinary assault and battery an undergarment would not get off in that way, and it is for you to determine how it got off, and for what purpose it was taken off."

Chief Justice CAMPBELL, speaking for this court, said :

" It appeared from Anderson's testimony that the attack and stripping were made by two of the three, whom he could not identify, and that, while he was down, and beaten by two, the third urged them not to strike him any more. There was no testimony of any opportunity for a conference, or of any conference in fact, before the attack, beyond the fact that on a sudden word of attack the assault was committed. There was no testimony of any knowledge of the Swedes, or that they had money, or where they kept it. While there was an evident concert of action

in the assault, it was no more necessarily or apparently than exists in any gang of bullies, who may or may not be also thieves.   There was no proof of subsequent possession of the pocketbook by any of the prisoners, who were themselves mining laborers earning wages.   The particular violence of tearing off the vest, while unquestionably within the responsibility of all the assailants, cannot in law be declared to have been within their specific intent, although possibly the jury might have so found as a fact. But when it is said by the court that whoever did it made no difference, and at the same time the jury were told to consider with what particular intent it was done—whether for assault or robbery—they were practically told that men who combine for an assault are liable for any felony committed by one of them, whether participants in the actual felonious design or not, which is not sound law. *People* v. *Knapp*, 26 Mich. 112; *Nye* v. *People*, 35 Mich. 16.

"It was in this condition of the case especially injurious to say to the jury, in effect, that from the fact that the vest was torn off something more must have been intended than a mere assault.   This was, under the circumstances, substantially telling them that there must have been a design to rob, for no other possible alternative appeared.   It is going beyond the province of the court to suggest how far any extent of violence indicates an intent to do more than commit violence."

The infirmity in the case at bar lies in charging the jury that if they found that the respondent was aiding and abetting, or that he was assisting some person in committing the assault upon the complaining witness, John Mundt, and that the assault was committed with the intent to rob, the respondent would be guilty of the crime charged in the information, assault with intent to rob. For aught that appears here, the aiding and abetting may have been simply in the assault.   There can be no criminal responsibility for anything not fairly within the common enterprise, and which might be expected to happen, if occasion should arise for any one to do it.   The assaulter may have intended to rob, but the respondent assisting in the assault may not have such intent.   The illustration given by the court was an unfortunate one in

a case of specific intent. Undoubtedly if two persons go out with a common purpose to rob a man—that being a felony—and the man resists, and is killed by one of the conspirators or robbers, while the other robber is aiding and abetting his comrade by watching in aid of the common purpose or conspiracy, both might be guilty of murder, and this because of the conspiracy to commit a felony. But that doctrine would not apply in a case of assault with intent on the part of the assaulter only to rob, where the common purpose was to commit an assault only—a mere misdemeanor. As Chief Justice CAMPBELL said in the *Foley Case:*

" It is going beyond the province of the court to suggest how far any extent of violence indicates an intent to do more than commit violence."

Because men combine for an assault, it does not follow that all are guilty of a felony committed by one of them. Especially is that true of the class of crimes we are considering, that of an act coupled with a specific intent. The *Foley Case* has been followed, and has been the law for 24 years, and the doctrine seems to be founded upon earlier decisions of this court.

For the error pointed out, the conviction is reversed, and a new trial granted.

OSTRANDER, MCALVAY, BROOKE, and BLAIR, JJ., concurred.