PEOPLE v AKERLEY

OPINION OF THE COURT

1. CRIMINAL LAW—WELFARE RELIEF—INFORMATION—CHANGES IN CIR-
   CUMSTANCES—RECIPIENT'S OBLIGATION—STATUTES.

   The Social Welfare Act imposes upon every person receiving
   relief the continuing obligation to supply the welfare depart-
   ment information concerning changes in circumstances which
   would decrease the need for relief, and failure to supply the
   department with this information either intentionally or due to
   culpable negligence will support a criminal conviction (MCLA
   400.60[2]; MSA 16.460[2]).

2. ADMINISTRATIVE LAW—WELFARE RELIEF—INFORMATION—CHANGES
   IN CIRCUMSTANCES—RECIPIENT'S OBLIGATION.

   Only the party receiving relief has a duty to supply the welfare
   department with information concerning changes in circum-
   stances which would decrease the need for relief.

3. CRIMINAL LAW—AIDING AND ABETTING—CRIMINAL INTENT.

   Conviction of a defendant as an aider and abettor requires proof
   that the aider and principal share a common intent or common
   purpose and, notwithstanding the accused aider's intent, such
   proof is a logical impossibility if proof of the actor's criminal
   intent is lacking.

4. CRIMINAL LAW—WELFARE ACT—INFORMATION—CRIMINAL INTENT—
   FINDINGS OF FACT—AIDING AND ABETTING.

   Specific findings of fact are necessary as to the intentions of both
   a principal and aider and abettor in an alleged violation of the
   welfare act, and if both harbored an intention to withhold
   required information from the department, both are guilty, but
   if the actor either intentionally or unintentionally failed to

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 79 Am Jur 2d, Welfare Laws §§ 111–113.
   Criminal liability in connection with application for or receipt of,
   public welfare or welfare payments. 92 ALR2d 421.
[3, 4] 21 Am Jur 2d, Criminal Law § 123.
[5] 79 Am Jur 2d, Welfare Laws § 113.

inform the department and this intention was not shared by the accused aider and abettor, the latter's conviction must be reversed.

Dissent by M. J. Kelly, P. J.

5. Criminal Law—Statutes—Welfare Violations—Felony Convictions—Reversal.

*A statute on welfare fraud requires that the amount in question exceed $500 for felony convictions of welfare violators; therefore, where the benefits received were $636 and the people failed to credit three $90 payments which were forwarded to the Department of Social Services and should have been offset against the benefits received, a defendant's felony conviction should be reversed (MCLA 400.60[1]; MSA 16.460[1]).*

Appeal from Delta, Clair J. Hoehn, J. Submitted October 13, 1976, at Marquette. (Docket Nos. 24807, 24836.) Decided January 17, 1977.

Mary Akerley was convicted of neglect or refusal to report changes in circumstances with respect to eligibility for welfare benefits. Donald Akerley was convicted of aiding and abetting Mary Akerley. Both defendants appeal. Remanded for further proceedings.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Robert Goebel,* Prosecuting Attorney (Prosecuting Attorneys Appellate Service, *Keith D. Roberts,* Assistant Attorney General, of counsel), for the people.

*Nino E. Green,* for defendant.

Before: M. J. Kelly, P. J., and J. H. Gillis and W. P. Hampton,* JJ.

W. P. Hampton, J. Defendant Mary Akerley was convicted, following a nonjury trial, of neglect or

---

* Circuit judge, sitting on the Court of Appeals by assignment.

refusal to report changes in her circumstances with respect to eligibility for welfare benefits, in violation of MCLA 400.60(2); MSA 16.460(2). At the same trial defendant Donald Akerley was convicted of an identical offense under the theory that he aided and abetted Mary Akerley in its commission. Both were sentenced to three years probation and ordered to pay restitution in the amount of $636. Both defendants appeal as of right.

The statute underlying both convictions reads in pertinent part:

"(2) Information furnished by recipients; failure. There is imposed upon every person receiving relief under this act either upon his own application or by his inclusion, to his knowledge, in the application of another the continuing obligation to supply to the department issuing the relief: * * * (c) information concerning changes in his circumstances or those of other persons receiving relief through the same application which would decrease the need for relief; * * * Any person who shall neglect or refuse to submit to the department issuing relief the information required by this section shall, if the amount of relief granted as a result of such neglect or refusal be less than $500.00, be guilty of a misdemeanor, and if the amount of relief granted as a result of such neglect or refusal be $500.00 or more, shall be deemed guilty of a felony, and upon conviction shall be punished as provided by the laws of this state."

After the case had been tried, the trial judge made specific findings of fact, all of which were amply justified by the evidence, from which he drew the following conclusions:

"Without determining the good faith of the action, the Court finds that the Defendants did separate in the latter part of March, 1974.
"The Court further finds that upon such separation,

Mary Akerley had made application for welfare payments to which she would not have been entitled had Donald Akerley been residing in their home at Bark River.

"The Court further finds that on or before June 24th, 1974, the parties, whether reconciled or not, resumed living at the same residence in Bark River.

"The acceptance of welfare payments imposed on the recipient a continuing obligation to supply the Department of Social Services information concerning any change in circumstances which would decrease the need for relief.

"The Court finds that the presence of an unemployed father in the home, who is receiving unemployment compensation benefits does in fact decrease the need for relief.

"This is true at least in relation to issuance of welfare, since the Department of Social Services has determined that welfare payments are not available to a family where the father receives unemployment compensation.

"The Court further finds under the testimony that the amount of welfare received as result of the failure upon Mary Akerley to advise the Department of her changed status was in excess of $500.00.

"*This Court finds the Defendant, Mary Akerley guilty as to Count II of the information.*

"On the 9th day of August, Donald Akerley advised a representative of the Department of Social Services that he was not residing at the Bark River address, but was a resident of Gwinn. This statement was untrue at the time it was made, and the Court finds that it was made for the purpose of assisting Mary Akerley in receiving aid for dependent children to which she was not entitled at the time.

\* \* \*

"This Court finds that the statements of Donald Akerley made on August 9th to the Department of Social Services to the effect that he was not residing at the Bark River Address aided and abetted Mary Akerley in the commission of the crime for which she has been found guilty."

Defendant Mary Akerley was charged in the disjunctive as one who "shall neglect or refuse". The trial court found specifically neither neglect nor refusal, but rather a "failure" to notify. The term "refuse" implies in the ordinary meaning an intentional, willful declination to perform an expected or required act. Black's Law Dictionary (4th ed), p 1447. On the other hand "neglect" implies a failure to act as required through either intention or culpable carelessness. Black's, *supra,* p 1184. Webster's Third New International Dictionary, pp 956, 1207. Thus, one may be convicted under the statute in question whether or not he or she entertains an intention to withhold the required information.

"Failure" does not mean precisely neglect or refusal. The term is variously defined to mean either of these. It may also mean a nonculpable omission due to "inevitable necessity". Black's, *supra,* p 711.

As trier of fact, free to believe or disbelieve any evidence offered and charged with the duty to assess weight and credibility, the trial court could have found on the record that defendant, Mary Akerley, either intentionally failed to report or failed to report due to culpable negligence. Either of these findings would support a criminal conviction of Mary Akerley.

However, the distinction between these theories is critical to the disposition of the case against Donald Akerley. Defendant Donald Akerley is not susceptible to criminal sanction under this section in his own right. The section imposes a duty only upon one "receiving relief". It is undisputed that it was his wife who made the application for and received ADC assistance.

To convict the defendant as an aider and abettor

it must be proven that aider and principal share a common criminal intent or common purpose. *People v Foley,* 59 Mich 553; 26 NW 699 (1886). *People v Sharon Brown,* 35 Mich App 330; 192 NW2d 671 (1971). Notwithstanding the accused aider's intent, such proof is a logical impossibility if proof of the actor's criminal intent is lacking. In short, if Mary Akerley's failure to inform the department of changed circumstances was unintentional, Donald Akerley cannot be convicted as an aider and abettor.

This matter must be remanded to the trial court for specific findings of fact as to the intentions of both defendants. If it is found that both defendant Mary and defendant Donald harbored an intention to withhold from the department the required information, both convictions are affirmed. If it is found that defendant Mary Akerley unintentionally failed to inform the department or that such failure was intentional but the intention was not shared by defendant Donald Akerley, the conviction of defendant Donald Akerley is reversed. This Court retains no further jurisdiction.

Remanded.

J. H. GILLIS, J., concurred.

M. J. KELLY, P. J. *(dissenting).* I would reverse for failure of the people to credit three $90 payments made by defendant Donald Akerley to the Friend of the Court, which payments were forwarded to the Department of Social Services and should have been offset against the $636 of benefits received. In order to convict the defendants of a felony, the statute requires that the amount in question exceed $500.