## PEOPLE v FREDERICK LESTER

1. CRIMINAL LAW—APPEAL AND ERROR—PRELIMINARY EXAMINATION
   —PROBABLE CAUSE—EVIDENCE—MAGISTRATE'S DETERMINATION
   —ABUSE OF DISCRETION.

   At a preliminary examination, the people are required to show
   that a crime has been committed and that there is probable
   cause to believe that the accused committed it; positive proof of
   guilt is not required, but there must be evidence on each
   element of the crime charged or evidence from which those
   elements may be inferred; a magistrate's determination of
   probable cause at a preliminary examination will not be re-
   versed on appeal absent a finding of a clear abuse of discretion.

2. CRIMINAL LAW—AIDERS AND ABETTORS—PRELIMINARY EXAMINA-
   TION—PROBABLE CAUSE—BURDEN OF PROOF.

   At a preliminary examination of defendants charged as aiders
   and abettors a prosecutor is required to establish probable
   cause to believe that they procured, counseled, aided, encour-
   aged or induced in some way the commission of a crime, and
   that they possessed the requisite intent or had knowledge of
   the intent to commit the crime.

3. HOMICIDE—PRELIMINARY EXAMINATION—PREMEDITATION AND DE-
   LIBERATION—PROBABLE CAUSE—MAGISTRATES—ABUSE OF DIS-
   CRETION.

   At a preliminary examination, an inference of premeditation and

---

REFERENCES FOR POINTS IN HEADNOTES
[1] 21 Am Jur 2d, Criminal Law § 449.
[2, 5] 21 Am Jur 2d, Criminal Law §§ 119, 442, 449.
[3] 40 Am Jur 2d, Homicide §§ 437–439.
[4] 75 Am Jur 2d, Trial §§ 483, 486, 487.
[6] 5 Am Jur 2d, Appeal and Error § 600.
[7] 81 Am Jur 2d, Witnesses §§ 434, 435, 514.
[8] 40 Am Jur 2d, Homicide §§ 530, 531.
[9] 75 Am Jur 2d, Trial §§ 883, 886.
[10] 76 Am Jur 2d, Trial §§ 1041–1043.

deliberation and a magistrate's finding of probable cause to believe that defendants acted with a common intent and purpose to effectuate a homicide is not an abuse of discretion where defendants had sufficient time to formulate a plan to murder, were armed, and appeared at the scene of the crime in a group.

4. CRIMINAL LAW—TRIAL—MOTIONS—DIRECTED VERDICT—EVIDENCE —SUFFICIENCY OF EVIDENCE—JURY QUESTION.

A trial judge in ruling on a motion for a directed verdict of not guilty must consider the evidence in a light most favorable to the prosecution; the motion should be denied if there is any evidence from which a jury could infer elements of the alleged offense because the question of sufficiency of the evidence is for the jury.

5. HOMICIDE—AIDERS AND ABETTORS—EVIDENCE—INFERENCES—JURY —VERDICT OF GUILTY.

A jury's verdict of guilty of aiding and abetting in a murder is supported by the evidence where trial testimony establishes inferences of premeditation, concerted action by the defendants for a common purpose, and assistance in the perpetration of the crime.

6. CRIMINAL LAW—APPEAL AND ERROR—EVIDENTIARY OBJECTIONS— PRESERVING QUESTIONS.

Evidentiary objections must be specific, citing the precise ground or grounds for the objection; failure to state the proper reason for an objection precludes appellate review unless there is manifest injustice; objection at trial to the admission of a statement on the ground that it was involuntary and then appeal on the ground that the statement was hearsay does not result in a miscarriage of justice where the statement was not inculpatory regarding any of the defendants in the trial.

7. WITNESSES—CRIMINAL LAW—UNRESPONSIVE ANSWERS—PREJUDICE —ISOLATED INCIDENT—FAIR TRIAL.

The general rule is that an unresponsive answer by a witness to a proper question is not error, and where an answer was made during cross-examination by the defense and was not elicited by the people no error occurred; furthermore, where the complained of comment constitutes one sentence in a transcript of 12 volumes in a three-week trial it was an isolated incident which did not deny the defendants a fair trial.

8. HOMICIDE—INSTRUCTIONS TO JURY—REQUESTED INSTRUCTIONS—
FAILURE TO GIVE INSTRUCTIONS—ESSENTIAL INSTRUCTIONS—AP-
PEAL AND ERROR.

A trial judge's failure to give an instruction to the jury on the
defense of accidental killing in requested form is not reversible
error where the instructions given are clear in advising the
jury in a murder trial that the prosecutor has the burden of
showing that the killing was wilful and intentional or was due
to the reckless disregard for the safety of others and where, in
essence, the requested instruction was given to the jury (GCR
1963, 516.7).

9. CRIMINAL LAW—INSTRUCTIONS TO JURY—APPEAL AND ERROR—RE-
QUESTED INSTRUCTIONS—FAILURE TO OBJECT—MANIFEST INJUS-
TICE.

Convictions should not be reversed for failure to give a specifi-
cally worded instruction on self-defense where there was no
request that an instruction be given and no objection that it
was not given unless there is a showing of a miscarriage of
justice; no manifest injustice occurs where the court's instruc-
tions viewed in their entirety adequately informed the jury of
the burden of proof in a criminal case and the instructions on
self-defense, as given, were not erroneous.

10. TRIAL—READING TESTIMONY TO JURY—COURT'S DISCRETION.

The reading of testimony from a court reporter's notes and the
extent to which it shall be read to the jury is primarily
addressed to the sound discretion of the trial judge, and no
reversible error occurred where the jury had requested the
reading of testimony and where the judge pointed out the
difficulty and delay in transcribing a court reporter's notes and
asked the jury to return to the jury room to continue delibera-
tions and to see if they could resolve their factual disputes.

Appeal from Wayne, Horace W. Gilmore, J.
Submitted June 6, 1977, at Detroit. (Docket Nos.
27554, 27555, 27556.) Decided September 6, 1977.
Leave to appeal applied for.

Frederick A. Lester, Joe W. Lester and James
M. Lester were convicted of first-degree murder.
Defendants appeal. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, *William L. Cahalan,*

Prosecuting Attorney, *Edward R. Wilson,* Research, Training and Appeals, and *Don W. Atkins,* Assistant Prosecuting Attorney, for the people.

*Chari K. Grove,* Assistant State Appellate Defender, for defendant James M. Lester.

*Carl Ziemba,* for defendants Frederick A. Lester and Joe W. Lester on appeal.

Before: J. H. Gillis, P. J., and Bronson and R. E. Robinson,* JJ.

J. H. Gillis, P. J. On December 2, 1975, defendants, tried jointly, were convicted by a jury of first-degree murder. MCLA 750.316; MSA 28.548. Defendants, all brothers, appeal as of right.

At trial, each defendant was represented by separate counsel. On appeal, defendants Joe and Frederick are represented by one attorney, and defendant James by a different attorney. The three cases have been consolidated on appeal.

There is no dispute that the fatal shot came from the gun that was held by defendant James. Defendants Joe and Frederick were tried and convicted as aiders and abettors. MCLA 767.39; MSA 28.979.

On August 20, 1975, the day of the homicide, decedent, Shane Davis, had three encounters with defendants at or near the corner of Salliotte and 15th Streets in the City of Ecorse, Michigan. For convenience, we will refer to the first encounter as the fighting incident, the second encounter as the B.B. gun incident and the third encounter as the homicide incident.

Shortly before the fighting incident, defendant

---

* Circuit judge, sitting on the Court of Appeals by assignment.

Frederick's girlfriend, Deborah Woods, after having passed Davis and Artie Coleman on the street, accused the two of calling her a name. Ms. Woods stated that she was going to get her man, and Davis told her to do so.

Ms. Woods returned with the three defendants. Defendant Frederick and Davis exchanged a couple of blows. At this point it is unclear exactly what happened. Coleman testified that defendant Frederick then chased Davis with a knife and that while the two were running defendant Joe stated: "It ain't over with yet." Other witnesses testified that they saw Davis running but did not see a knife. Regardless, after the fighting incident, defendants went into the Better World Motel which is located near the scene.[1]

Shortly thereafter, Davis and defendants returned to the street. At this time, Davis chased at least one defendant with a B.B. pistol.[2]

Defendants again returned to the motel for a short while. Defendants Joe and James then left the motel followed by defendant Frederick. Defendant James was carrying a pistol and defendant Joe was carrying a rifle. Defendant Frederick had no weapon. Although the record is not completely consistent regarding the homicide incident, the following is in our opinion a fair representation of the facts as testified to from the witness stand.

Davis had also returned to the scene. He walked toward defendants. Defendant James told Davis to freeze and hand it over. Davis put his hands up in the air. Defendant James grabbed Davis by the

---

[1] The testimony at trial established that Ms. Woods and defendant Frederick shared living quarters in the Better World Motel and that defendant James lived across the hall. Defendant Joe lived elsewhere.

[2] There was testimony presented at trial that the B.B. gun looked very much like a real gun and that one could not tell the difference unless he or she was very close to the gun.

collar. Davis then moved his right hand toward his left side whereupon the fatal shot was fired hitting Davis in the chest. All three defendants fled the scene. Davis was taken to the hospital where he died a short time later.

Other testimony at trial revealed that Davis had left the vicinity in between the three encounters with defendants and that Davis was angry about the fighting incident and had bragged to others about chasing defendants with the B.B. gun. There was also testimony that at the time of the B.B. gun incident someone or possibly some people had yelled at Davis to shoot.

Although at least two witnesses testified as to having seen the B.B. gun in Davis' possession just prior to the homicide incident, one having seen it in Davis' waistband, it has never been found. The police did find a knife on the person of Davis. The autopsy revealed that Davis was mildly to moderately intoxicated at the time of his death.

Defendant James testified in his own behalf. He stated that after the B.B. gun incident someone had yelled up to the motel: "Come on down. If you don't come down, we are going to come up there." Defendant James further testified that they all decided to go to defendant Joe's house and that they took guns for protection and that on the way Davis cut them off from getting to their car and said: "I want to blow your damn head off." Defendant James said that when he saw a gun in Davis' waistband, he drew his own gun and told Davis to freeze whereupon he grabbed Davis by the collar and called his brothers to come and get Davis' gun. Defendant James went on to say that at that time Davis reached for his gun and that while trying to keep Davis from the gun his own gun went off. Defendant James claimed that the shot

was not intentional and that the gun was fired accidentally.

One witness testified that he heard defendant James cock the pistol while approaching Davis.

Ms. Woods testified that prior to the homicide incident defendants Joe and James had stated that no one was going to hurt their brother, that all three defendants were in defendant Frederick's and her room, that defendants Joe and James left the room and that a short time later defendant Frederick left to see where his brothers had gone. Ms. Woods also stated that at no time did she hear defendants discussing or planning to hurt anyone.

George Junior Drakeford testified that he found defendants James and Joe in his apartment on the day of the homicide assembling a shotgun and that they gave him $20 and took the gun. He further stated that defendants James and Joe also had a pistol.

Defendants collectively raise eight issues. We will discuss them individually. Additional facts will be related within the opinion where pertinent thereto.

I

*Did the trial court err in denying defendants Joe and Frederick Lester's motion to dismiss the information filed against them?*

Defendants Joe and Frederick claimed that the evidence at the preliminary examination failed to establish probable cause that they committed the charged crime. Defendants Joe and Frederick moved the trial court prior to trial to dismiss the information filed against them. The trial court denied the motion. Defendants Joe and Frederick

allege error. This issue does not apply to defendant James.

Artie Coleman and Dr. Sabish Shah were the two witnesses who testified at the preliminary examination of defendants Joe and Frederick.[3]

Dr. Shah testified that the cause of death was a gunshot wound and that the gun had been fired from close range.

Artie Coleman testified that there were two encounters between Davis and defendants on August 20, 1975. He stated that following the accusation by Ms. Woods she returned to the street with the three defendants, that defendant Frederick and Davis exchanged blows and then defendant Frederick chased Davis with a knife. Coleman further testified that defendant Joe then stated: "The shit is not over with now."

According to Coleman, defendants then went into the motel and Davis proceeded to the store to purchase a package of cigarettes. A short time later, defendants returned to the scene. Coleman stated that defendant James was armed with a pistol and defendant Joe was carrying a rifle and that the three defendants were within a car length of each other. At that time, Coleman heard defendant James order Davis to stop whereupon defendant James aimed the gun and fired into Davis' chest. Coleman further testified that Davis was trying to get away when he was shot and that defendants immediately left the scene.[4]

[3] There were two preliminary examinations in this case. The one on September 18, 1975, was as to defendant James only. The preliminary examination of September 4, 1975 was as to defendants Joe and Frederick.

[4] Although it is of no effect in reviewing the denial of defendant's motion, we do recognize and point out that Coleman's testimony at trial varied from his preliminary examination testimony. At trial, Coleman testified as to three encounters while at the preliminary examination he mentioned only two. Additionally, at the preliminary

At the preliminary examination, the people are required to show that a crime has been committed and that there is probable cause to believe that the accused committed the crime. *People v Charles D Walker,* 385 Mich 565; 189 NW2d 234 (1971). Positive proof of guilt is not required; however, there must be evidence on each element of the charged crime or evidence from which those elements may be inferred. *People v Juniel,* 62 Mich App 529, 536; 233 NW2d 635 (1975), *lv den,* 396 Mich 811 (1976), *People v Martinovich,* 18 Mich App 253, 257; 170 NW2d 899 (1969).

A reviewing court, even if it disagrees with the magistrate's decision, may not reverse the magistrate's determination of probable cause absent a finding of a clear abuse of discretion. *People v Paille #2,* 383 Mich 621; 178 NW2d 465 (1970).

Defendants Joe and Frederick were charged as aiders and abettors. Therefore, it was necessary for the prosecutor to establish probable cause to believe that they procured, counseled, aided, encouraged or induced in some way the commission of the crime and that they possessed the requisite intent or had knowledge of the intent to commit the crime. *People v Palmer,* 392 Mich 370, 378; 220 NW2d 393 (1974), *People v Spry,* 74 Mich App 584; 254 NW2d 782 (1977), *People v Burgess,* 67 Mich App 214; 240 NW2d 485 (1976), MCLA 767.39; MSA 28.979.

Defendants Joe and Frederick argue that the prosecutor failed to produce competent evidence at the preliminary examination from which an inference of premeditation and deliberation could be drawn. We disagree.

The testimony at the preliminary examination

---

examination, Coleman denied seeing Davis with a gun and at trial admitted seeing Davis with the B.B. gun.

established that all three defendants were present at the initial confrontation with Davis, that the three went into the motel together and returned as a group armed, whereupon the homicide occurred.

The time that defendants spent in the motel was sufficient to formulate a plan to murder Davis. The fact that the three reappeared on the scene as a group, armed, further supports an inference of premeditation and deliberation. *People v Hoffmeister,* 394 Mich 155; 229 NW2d 305 (1975), *People v Oster,* 67 Mich App 490; 241 NW2d 260 (1976), *lv den,* 397 Mich 848 (1976). There was adequate testimony to support a finding of probable cause to believe that defendants acted with a common intent and purpose to effectuate the homicide of Davis and therefore aided and abetted in the killing. *People v Akerley,* 73 Mich App 321; 251 NW2d 309 (1977). The magistrate did not abuse his discretion.

## II

*Did the trial court err in denying defendants' motion for a directed verdict of not guilty?*

Defendants Joe and Frederick argue that there was no evidence adduced at trial to show that they aided and abetted in the charged crime and that the trial court erred in denying their motion for a directed verdict. Defendant James has not briefed this issue.[5]

In ruling on a motion for a directed verdict of not guilty, the trial judge must consider the evidence in a light most favorable to the prosecution.

[5] At trial, defendant James made a motion for a reduction of the charge. Our disposition of this issue regarding defendants Joe and Frederick would dispose of the issue as it relates to defendant James assuming it had been argued on appeal.

*People v Garcia,* 398 Mich 250, 256; 247 NW2d 547 (1976). The question of sufficiency of the evidence is for the jury; therefore, if there is any evidence from which the jury could infer the elements of the alleged offense, the motion must be denied. *People v Garcia, supra, People v Johnson,* 397 Mich 686, 687; 246 NW2d 836 (1976).

Although the facts presented at trial were not entirely consistent with the preliminary examination testimony, see footnote 4, *supra,* the evidence relating to a group effort by defendants remains the same. We find as we did from the preliminary examination testimony that the evidence presented at trial supports an inference that defendants Joe and Frederick joined in a concerted action with defendant James for a common purpose and accordingly assisted in the perpetration of the crime. Defendants Joe and Frederick are therefore culpable for whatever crime defendant James could be charged with committing. *People v Palmer, supra, People v Spry, supra, People v Akerley, supra, People v Burgess, supra.*

We also reiterate what was said in issue one regarding the element of premeditation. Testimony was presented at trial that defendants had encountered Davis on two occasions that day, they proceeded into the hotel, returned with guns, that defendant James cocked his pistol and pointed it into Davis' chest and then the gun was fired. The evidence does support the jury's verdict. *People v Hoffmeister, supra, People v Moss,* 70 Mich App 18; 245 NW2d 389 (1976), *lv den,* 399 Mich 852 (1977), *People v Morrin,* 31 Mich App 301; 187 NW2d 434 (1971), *lv den,* 385 Mich 775 (1971).

### III

*Did the trial court err in permitting a written*

*statement, allegedly orally made by defendant Frederick to a police officer, to be read to the jury where defendant did not sign same?*

At trial, a police officer testified that after the arrest of defendant Frederick he asked defendant Frederick questions regarding the incident. The officer further stated that he wrote defendant Frederick's statement on paper, but that defendant Frederick refused to sign the statement.

Prior to trial, defendant Frederick sought to have the statement suppressed. A *Walker* [6] hearing was conducted and the trial court held the statement to be voluntary and therefore admissible.

At trial, the statement was read to the jury. An objection was made at that time on the grounds that the statement was involuntary because defendant Frederick did not understand the *Miranda* [7] warnings due to his physical condition.

On appeal, defendants Joe and Frederick cite a different ground for inadmissibility by arguing that the statement was inadmissible because it constituted hearsay.[8] See *People v Rodgers,* 388 Mich 513; 201 NW2d 621 (1972).

Evidentiary objections must be specific, citing the precise ground or grounds for the objection. Failure to state the proper reason for an objection precludes appellate review unless there is manifest injustice. *People v Buero,* 59 Mich App 670; 229 NW2d 880 (1975), *People v Winfield,* 39 Mich App 281; 197 NW2d 541 (1972), *lv den,* 389 Mich 766 (1973). The statement introduced in the instant

---

[6] *People v Walker (On Rehearing),* 374 Mich 331; 132 NW2d 87 (1965).

[7] *Miranda v Arizona,* 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694; 10 ALR3d 974 (1966).

[8] We question defendant Joe's standing to raise this issue as the statement did not inculpate him.

case was not inculpatory regarding any of the defendants. We are unpersuaded that a miscarriage of justice has occurred. *People v Galinski,* 38 Mich App 214; 196 NW2d 21 (1972), *lv den,* 387 Mich 793 (1972).

## IV

*Did the trial court err in denying defendants' motion for a mistrial on the grounds that a police officer unresponsively answered a question on cross-examination to reveal that narcotics were found in defendant Frederick's room at the time of his arrest?*

Officer Alvin Deming was called as a prosecution witness. He testified that he had arrested defendant Frederick in an upstairs apartment at the Better World Motel. During cross-examination by defendant Frederick's attorney the following colloquy occurred:

"Q (By counsel for defendant Frederick) Did you prepare a police report on anything that you had done in the case?

"A Yes, we did.

"Q Do you know where that police report is?

"A No, I don't.

"Q Beg your pardon?

"A No.

"Q Are you quite certain that you prepred [sic] a report?

"A My partner on the evening was actually off duty, but David Lundgran prepared a report. There was narcotic paraphernalia found in the apartment of Frederick Lester, and this was seized by the department."

Immediately, defendant Frederick's attorney requested that the jury be excused and moved for a mistrial on the grounds that the officer's answers

indicated the commission of another crime. The other two defendants joined in the motion. The trial court denied the motion on the basis that "the reason it came out is that you had your answer and you pursued it, and it came out". Defendants claim error.

The general rule is that an unresponsive answer to a proper question is not error. *People v Todaro,* 253 Mich 367; 235 NW 185 (1931), *People v Rimson,* 63 Mich App 1; 233 NW2d 867 (1975), *People v Measles,* 59 Mich App 641; 230 NW2d 10 (1975), *People v Histed,* 56 Mich App 630; 224 NW2d 721 (1974).

In the instant case, the answer was made during cross-examination by the defense and was not elicited by the people. Defendants' authorities refer to the latter situation. See *People v Embry,* 68 Mich App 667; 243 NW2d 711 (1976), *People v McCartney,* 46 Mich App 691; 208 NW2d 547 (1973), *People v Page,* 41 Mich App 99; 199 NW2d 669 (1972).

Considering that the complained-of comment constitutes one sentence in a transcript of 12 volumes and that the trial lasted some three weeks, along with the fact that the prosecution did not elicit the answer, we find that this isolated incident did not deny defendants a fair trial. *People v Measles, supra.*

V

*Did the trial court err in refusing to give a requested instruction on the defense of accident?*

All three defendants raise this issue. Although there is some question as to whether or not this issue is preserved, we will treat it as having been preserved.

The following instruction was submitted to the trial court with the request that it be given to the jury:

"A defense of accidental killing has been raised in this case. Such a defense of accidental killing to a prosecution for homicide denies that the killing was intentional, but does not throw upon or shift to the accused the burden of proving that the homicide occurred by accident or misadventure. It is the general rule that where the defense of accidental killing is set up, the burden rests upon the prosecution to show that the killing was wilful and intentional, or that it was due to the reckless disregard for the safety of others."

The trial judge instructed the jury as to first-degree murder, MCLA 750.316; MSA 28.548, second-degree murder, MCLA 750.317; MSA 28.549, voluntary manslaughter, MCLA 750.321; MSA 28.553, and intentional aiming of a firearm with death resulting, MCLA 750.329; MSA 28.561. The trial judge did not give the instruction to the jury in requested form. The following are excerpts from the trial court's charge to the jury:

"The defendant is not required to prove his innocence, but the People must establish his guilt beyond any reasonable doubt. This applies in all criminal cases to every material fact connected with the case.

"If, after all of the evidence is before you, you still have a reasonable doubt of the guilt of the defendant, it is your duty to acquit him.

"In every criminal case the burden is throughout upon the prosecution, and it is incumbent upon the prosecution to show under all circumstances that there is no innocent theory possible which will, without violation of reason, accord with the facts. The burden of proof, as I say, is upon the prosecutor, and the People must prove by legal testimony and beyond a reasonable doubt a state of facts which will justify a conviction.

\* \* \*

"For murder in the first degree there must be an actual intention to kill; that is, the defendant must have consciously done the act intending that it resulted in death.

"For murder in the first degree there must be proof beyond a reasonable doubt that the killing was done premeditatedly, deliberately, wilfully. Premeditation means thought out beforehand or designed and planned. Deliberately means the defendant must have considered the pros and cons of that design to have measured and chosen his acts and the intent must be formed by a mind that is free from undue excitement.

* * *

"For murder in the second degree you must find that the defendant consciously and knowingly performed the act which caused death. The defendant must have intended to kill; that is, he must have done the act intending that it result in death, or he must have consciously created a very high degree of risk of death of another with the knowledge that it probably would cause death.

* * *

"Now, in addition to those three offenses that you may consider, murder in the first degree, intentional, wilful and premeditated killing with malice, or murder in the second degree, intentional killing with malice but without premeditation, or voluntary manslaughter, intentional killing before the blood had an opportunity to cool but without malice, in addition to that there is another statute that you may consider under the law. That law says that any person who shall wound, maim or injure any other person by the discharge of any firearm pointed or aimed intentionally but without malice at such person shall, if death ensued from such wounding, maiming or injury, be deemed guilty of the crime of manslaughter."

We find that the above instructions are clear in advising the jury that "the burden rests upon the prosecution to show that the killing was wilful and

intentional, or that it was due to the reckless disregard for the safety of others", and that in essence, the requested instruction was given to the jury. GCR 1963, 516.7.

## VI

*Did the trial court err in failing to instruct the jury that even though defendants had interposed a defense of self-defense the burden remained on the prosecution to prove beyond a reasonable doubt that the killing was not done in self-defense?*

All three defendants have raised this issue on appeal. At trial, there was no request that the instruction be given and no objection that it was not given. Accordingly, the convictions cannot be reversed unless there is a showing that a miscarriage of justice has occurred. MCLA 769.26; MSA 28.1096, *People v Alcala,* 396 Mich 99; 237 NW2d 475 (1976).

We have reviewed the instructions in their entirety, *People v Rogers,* 60 Mich App 652; 233 NW2d 8 (1975). We find that the jury was adequately informed of the burden of proof regarding criminal cases and that the self-defense instructions, as given, were not erroneous. We do not find manifest injustice in the omission of the unrequested instruction.

## VII

*Did the trial court err in failing to instruct the jury that in a claimed self-defense situation a killing not legally self-defense can be manslaughter without a "state of passion"?*

This issue is raised only by defendant James. As in issue six, there was no request for an instruction nor objection to the failure to give this type of

manslaughter instruction. For the same reasons as stated within issue six there was no reversible error.

## VIII

*Did the trial court commit reversible error in refusing the jury's request to have certain testimony reread?*

After approximately four hours of deliberation, the jury delivered a note requesting "testimony of all witnesses from the time the Lester brothers came onto the street armed up to and including the shooting of Shane Davis".

The trial judge responded to the jury:

"Now, let me start out by explaining to you all that there was some reference made to a transcript. Lawyers can always order small portions of the transcript. There is no transcript of the entire trial. It has not been typed up. It is all in the reporter's notes.

"The only way to comply with that request at this time would be to have the reporter go through all his notes and read all his testimony back to you, because it has not been transcribed. That would probably take the better part of a day or two days to do.

"Because at this moment that I don't have the transcripts, and I don't think that it would be proper to ask him to hold you for approximately a day or two days to read all of the examination, cross-examination, redirect examination of the witnesses, I am going to ask you will you go back and try among the 12 of you to recall the testimony yourself rather than have it read, have all of this read back to you.

"It would take the reporter a long time to get those notes together, to furnish you what you want. Then he would have to read it all to you, which is, as I say, something that takes a day or two days.

"We were in trial for nearly three weeks, and I am not sure how long it would take. So, instead of doing

that *now,* I am going to ask you to return to your jury room and continue your deliberations and see if you can resolve your factual dispute among yourselves in your deliberations.

"You may be excused." (Emphasis supplied.)

Defendant James claims error. The remaining two defendants have not briefed this issue.

Defendant relies on *People v Howe,* 392 Mich 670; 221 NW2d 350 (1974). We find that the facts in the instant case more closely mirror *Klein v Wagenheim,* 379 Mich 558; 153 NW2d 663 (1967), and we therefore find no reversible error.

For the foregoing reasons, defendants' convictions are affirmed.

Affirmed.