PEOPLE v WIRTH

Docket No. 77-1265. Submitted October 5, 1978, at Lansing.—Decided
    November 7, 1978.

Defendant Daniel Wirth was convicted, on his plea of nolo con-
    tendere, of being an aider and abettor to the crime of extortion
    in the Washtenaw Circuit Court, Edward D. Deake, J. He was
    originally charged with kidnapping and extortion. Defendant's
    participation consisted of driving the perpetrators to the vicin-
    ity of the crime, picking them up when they called, delivering a
    package during the course of the crime and sharing in the
    proceeds. Defendant knew the perpetrators had weapons and
    planned to "score something big" but did not learn the nature
    of the crime until after its commission. Defendant appeals
    raising several issues. *Held:*

    1. The FBI agent questioning defendant in a house located
    about 100 feet from a tree to which a victim had been tied
    during the crime had probable cause to arrest defendant where
    he was informed that defendant had been seen in a car belong-
    ing to one of the primary suspects and was seen in the com-
    pany of another primary suspect shortly after the ransom had
    been paid and that an eyewitness had made a statement
    connecting defendant to the two primary suspects.

    2. The voluntariness of a defendant's statements to police is
    to be determined from the totality of the circumstances; a
    defendant's refusal to sign a waiver form is only one factor in
    the totality of circumstances considered and does not, by itself,
    render defendant's later statements inadmissible.

    3. One accused of aiding and abetting a specific intent crime
    cannot be held as a principal unless he himself possessed the
    required specific intent or unless he aided and abetted another
    in the perpetration of that crime knowing that the perpetrator

REFERENCES FOR POINTS IN HEADNOTES
[1] 68 Am Jur 2d, Searches and Seizures §§ 41-45.
    5 Am Jur 2d, Arrest §§ 44-49.
[2] 5 Am Jur 2d, Arrest §§ 44, 49.
[3] 29 Am Jur 2d, Evidence §§ 611-613.
[4, 6] 21 Am Jur 2d, Criminal Law §§ 82, 123.
[5] 21 Am Jur 2d, Criminal Law § 443.

had the required intent; intent is a question of fact to be inferred from the circumstances.

4. An aider or abettor is criminally responsible for the acts of his principals when he knows the actual perpetrators had the required intent, and, in specific intent crimes, it is not necessary that the aider or abettor have knowledge of the perpetrators' specific intent where he had knowledge that the perpetrators had the criminal intent to do what they planned.

Affirmed.

1. ARREST—CRIMINAL LAW—SEARCHES AND SEIZURES—PROBABLE CAUSE—PRUDENT PERSON TEST.

Probable cause for a police officer to arrest and seize evidence exists where facts and circumstances would lead a reasonably prudent person to the honest belief that a felony had been committed and that the defendant participated therein.

2. APPEAL AND ERROR—ARREST—CRIMINAL LAW—PROBABLE CAUSE—DISCRETION.

Once a trial court has found probable cause for an arrest the Court of Appeals will overturn such a ruling only where an abuse of discretion is shown.

3. CRIMINAL LAW—STATEMENTS OF DEFENDANT—VOLUNTARINESS—TOTALITY OF CIRCUMSTANCES—REFUSAL TO SIGN WAIVER.

The voluntariness of a defendant's statements to police is to be determined from the totality of the circumstances; a defendant's refusal to sign a waiver form is only one factor in the totality of circumstances considered and does not, by itself, render defendant's later statements inadmissable.

4. CRIMINAL LAW—SPECIFIC INTENT CRIMES—AIDING AND ABETTING—INFERENCES.

One accused of aiding and abetting a specific intent crime cannot be held as a principal unless he himself possessed the required specific intent or unless he aided and abetted another in the perpetration of that crime knowing that the perpetrator had the required intent; intent is a question of fact to be inferred from the circumstances.

5. CRIMINAL LAW—PRELIMINARY EXAMINATION—PROOF OF OFFENSE—PROOF OF GUILT—ELEMENTS OF CRIME.

The prosecutor must show, at a preliminary examination, that the offense charged has been committed; while positive proof of guilt is not required, there must be evidence on each element of

the crime charged or evidence from which those elements may be inferred.

6. CRIMINAL LAW—AIDING AND ABETTING—INTENT—SPECIFIC-INTENT CRIMES.

An aider or abettor is criminally responsible for the acts of his principals when he knows the actual perpetrators had the required intent, and, in specific intent crimes, it is not necessary that the aider or abettor have knowledge of the perpetrators' specific intent where he had knowledge that the perpetrators had the criminal intent to do what they planned.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William F. Delhey,* Prosecuting Attorney, and *John M. Zukowski,* Assistant Prosecuting Attorney, for the people.

*Hazlett & Judge* and *Toomey, Stewart & Bambery,* for defendant on appeal.

Before: V. J. BRENNAN, P.J., and ALLEN and P. F. O'CONNELL,* JJ.

PER CURIAM. Defendant was convicted of being an aider or abettor, MCL 767.39; MSA 28.979, to the crime of extortion, MCL 750.213; MSA 28.410, following his plea of nolo contendere to that charge on December 13, 1976. Defendant was initially charged with kidnapping, MCL 750.349; MSA 28.581, and extortion but the kidnapping count was dropped as part of a plea bargain. Defendant was sentenced to 2 years and 6 months to 20 years in prison, and now appeals of right.

The kidnapping and extortion charges stemmed from a plot to kidnap members of the William Schulenberg family and hold them for ransom. The abduction took place in the evening of September 29, 1975, the ransom was paid on the

---

* Circuit judge, sitting on the Court of Appeals by assignment.

morning of September 30, and those abducted were released on the morning of September 30.

Defendant's role was to take the principals in the crime to the area of the Schulenberg home and later to pick them up when they called. Defendant also left a package at a designated spot during the course of the crime. For his part, defendant received 10% of the ransom, $4,400. When defendant dropped off the principals he saw that they carried a rifle and a shotgun. Defendant said he knew the plan was to "score something big" but he had no idea as to what crime was intended. According to defendant, he learned of the kidnapping when he heard about it on the radio on the morning of September 30.

On appeal defendant contends that an incriminating statement he made should have been excluded because it was the inadmissible fruit of a warrantless arrest made without probable cause. In order for an officer to make a warrantless arrest there must be circumstances that would lead a reasonably prudent person to the belief that a felony had been committed and that defendant had participated therein. *People v Thatcher,* 83 Mich App 527; 269 NW2d 210 (1978), *People v Tebedo,* 81 Mich App 535; 265 NW2d 406 (1978), MCL 764.15(c); MSA 28.874(c). Since the lower court has determined that there was probable cause, we review its ruling for an abuse of discretion. *People v Thatcher, supra* at 529.

Defendant was arrested on October 1, 1975, at a house which was located about 100 feet from a tree to which a member of the Schulenberg family was tied during the course of the crime. Police and FBI agents were investigating the crime and FBI agent Eiden was questioning defendant. Another agent phoned Eiden to inform him that defendant

was seen in a car belonging to one of the primary suspects in the case, Todd Szynwelski, and was accompanied by the other primary suspect, Ken Royce, shortly after the ransom had been paid on the morning of September 30. Defendant and Royce had been seen arriving at the house then being investigated. Agent Eiden was also informed that one Mary Sequara[1] had made a statement connecting defendant with Royce and Szynwelski. At this point Eiden told defendant the complexion of the interview had changed and that defendant was under arrest. We find that there was no abuse of discretion in the lower court concluding that these facts constituted probable cause to arrest defendant.

After being arrested, Eiden informed defendant of his rights by presenting him with a form enumerating the *Miranda* rights. Defendant read the form and refused to sign it, but he did initial a statement that he had read the form and declined to sign it. Shortly thereafter, defendant said he would tell what he knew. The agents then took defendant to the local FBI office. En route they stopped at defendant's mother's house to retrieve defendant's share of the ransom. Defendant's mother asked him if he wanted an attorney and defendant responded that he did not. At the FBI office defendant read a rights and waiver form identical to the one he had read earlier. This time defendant signed the form. Defendant then made an incriminating statement which he refused to sign on the advice of attorneys sent by his mother.

As previously noted, defendant's statement was not inadmissible due to an invalid arrest. Defendant also contends the statement was inadmissible because it was involuntary and was obtained in

---

[1] Mary Sequara was an eyewitness to parts of the crime.

violation of his right to remain silent. We find, as did the lower court, that the statement was voluntarily made and was admissible. The question of voluntariness is to be determined from the totality of the circumstances. *People v Smith,* 80 Mich App 106; 263 NW2d 306 (1977), *People v Cutler,* 73 Mich App 313; 251 NW2d 303 (1977). In this case we are convinced that defendant voluntarily waived his right to remain silent. Defendant indicated he wished to talk, twice he read and understood his rights, he signed a waiver form the second time, and he declined his mother's initial suggestion to obtain counsel. Defendant's initial refusal to sign the waiver form is only one factor in the totality of the circumstances considered, and it did not render defendant's later statements inadmissible. *People v Oliver,* 63 Mich App 509; 234 NW2d 679 (1975), *People v McClendon,* 48 Mich App 552; 210 NW2d 778 (1973).

Defendant also questions whether he could be convicted of extortion as an aider and abettor where he allegedly did not have the requisite specific intent to commit the crime. Defendant attacks the propriety of both his bindover following his preliminary examination and his nolo contendere plea on the ground that the evidence did not show his specific intent to extort.

To be held criminally liable for a specific intent crime as an aider or abettor, a defendant must have had either the requisite specific intent or known that the actual perpetrator had the required intent. *People v Frederick Lester,* 78 Mich App 21; 259 NW2d 370 (1977), *People v Poplar,* 20 Mich App 132; 173 NW2d 732 (1969). Intent is a question of fact to be inferred from the circumstances by the trier of fact. *People v Spry,* 74 Mich App 584; 254 NW2d 782 (1977), *People v Sharp,* 57

Mich App 624; 226 NW2d 590 (1975). It is likewise a factual issue whether a particular act or crime committed was fairly within the intended scope of the common criminal enterprise. *People v Haack,* 396 Mich 367; 240 NW2d 704 (1976), *People v McGuire,* 39 Mich App 308; 197 NW2d 469 (1972), *People v Pearce,* 20 Mich App 289; 174 NW2d 19 (1969), *People v Poplar, supra.*

An examining magistrate may bind a defendant over for trial only if he determines that an offense has been committed and that there is probable cause to believe the defendant committed it. *People v Morris,* 66 Mich App 514; 239 NW2d 649 (1976). In order to find probable cause there must be evidence on each element of the offense or evidence from which those elements may be inferred, but the elements need not be proven beyond a reasonable doubt. *People v Oster,* 67 Mich App 490; 241 NW2d 260 (1976), *People v Smith,* 49 Mich App 630; 212 NW2d 768 (1973). That ultimate finding is for the trier of fact. The magistrate's determination is reviewed for an abuse of discretion. *People v Melvin,* 70 Mich App 138; 245 NW2d 178 (1976). In this case the only question concerned the element of intent, and there was sufficient evidence to infer that defendant had the requisite intent. Defendant's disclaimers concerning specific intent could be rejected by the magistrate and the trier of fact. *People v Haack, supra.* There was sufficient evidence to bind over defendant.

Much the same reasoning that was applied to the propriety of the bindover can be applied to the validity of the nolo contendere plea. A factual basis must be established to support a plea of nolo contendere. GCR 1963, 785.7(3)(b)(ii). In this case the same facts supporting the bindover can sup-

port the plea. The question of whether defendant actually did have the necessary specific intent was a question of fact for the trier of fact, and by pleading nolo contendere defendant waived his right for the trier of fact to make that determination. However, there was ample evidence from which defendant's intent could be inferred, and therefore acceptance of the plea was proper.

Defendant also argues that the bindover and conviction were improper because the magistrate and the circuit court found as a fact that defendant lacked the specific intent to extort and did not know of the specific intent his accomplices had.[2] While these alleged findings could be construed as summaries of defendant's position, we cannot agree with defendant's contention on appeal even assuming, *arguendo,* that such findings were made. Defendant's contention is that he was unaware of what intent his accomplices had. But an aider or abettor is criminally responsible for the acts of his principals when he knows the actual perpetrators had the required intent. Taken literally, defendant meets this test because he knew that the principals had the criminal intent to do what they planned. Defendant did not know what they planned, but he knew they had the specific intent to do whatever they had planned.

Defendant's intent itself also supports our conclusion. It can be argued that defendant intended

---

[2] Defendant points to the following statements, which are necessarily taken out of context, to indicate the finding:

"Wirth knew that Todd and Kenny had intended to 'score something big', * * * Defendant Daniel Wirth knew that something illegal was happening, or that his other two 'partners' had intended to score something big." (Trial court summarizing evidence during the plea proceedings.)

"This defendant saw the weapons. He knew there was a score. He may not have known exactly what the crime was going to be, but he had put no limitation on his involvement." (District court's comment in overruling an objection to the bindover.)

any and all consequences of the criminal undertaking. Defendant intended to partake in whatever crime was planned and he did not care what it was. He knew weapons were involved and this did not deter him. It could be concluded that defendant's intent encompassed all crimes, including extortion. By the same token, the scope of the criminal undertaking with which defendant knowingly associated himself would be unlimited.

Finally, for policy reasons we cannot accept defendant's argument. In effect, defendant is arguing that he can knowingly further criminal activity and avoid the concomitant criminal liability by intentionally ignoring the nature of the crime. Society cannot condone such criminal irresponsibility, and in this situation ignorance does not mean innocence.

Affirmed.