PEOPLE v HARRIS

PEOPLE v RAGLAND

PEOPLE v GIVENS

Docket Nos. 52615, 53103, 53133. Submitted August 17, 1981, at Lansing.—Decided October 21, 1981.

Floyd J. Harris, Aaron L. Ragland, and Joe Givens, Jr., were tried in Genesee Circuit Court, Thomas C. Yeotis, J., and were each convicted of assault with intent to rob while armed. Givens was also convicted of assault with intent to do great bodily harm less than murder. The charges arose out of a bank

REFERENCES FOR POINTS IN HEADNOTES

[1] 75 Am Jur 2d, Trial § 483.

[2] 67 Am Jur 2d, Robbery §§ 4, 80, 83, 84.

[2, 5] 6 Am Jur 2d, Assault and Battery § 20.

[3] 21 Am Jur 2d, Criminal Law § 167.

[4] 67 Am Jur 2d, Robbery §§ 4, 14.

[5] 40 Am Jur 2d, Homicide § 578.

[6-9] 21A Am Jur 2d, Criminal Law §§ 654, 853.

Accused's right to speedy trial under federal constitution—Supreme Court cases. 21 L Ed 2d 905.

[7, 11] 21A Am Jur 2d, Criminal Law §§ 655, 656, 859, 860.

[8] 21A Am Jur 2d, Criminal Law § 860.

[9] 21A Am Jur 2d, Criminal Law §§ 665, 867.

Waiver or loss of accused's right to speedy trial. 57 ALR2d 302.

[10] 21A Am Jur 2d, Criminal Law § 851.

[12] 75 Am Jur 2d, Trial §§ 17, 21.

Antagonistic defenses as ground for separate trials of codefendants in criminal case. 82 ALR3d 245.

[13] 21A Am Jur 2d, Criminal Law §§ 720 et seq., 956 et seq. 29 Am Jur 2d, Evidence § 539.

Federal constitutional right to confront witnesses—Supreme Court cases. 23 L Ed 2d 853.

[14] 81 Am Jur 2d, Witnesses §§ 139, 658.

Credibility of witness giving uncontradicted testimony as matter for court or jury. 62 ALR2d 1191.

[15] 29 Am Jur 2d, Evidence § 545 et seq.

Admissibility of pretrial confession in criminal case—Supreme Court cases. 4 L Ed 2d 1833, 12 L Ed 2d 1340, 16 L Ed 2d 1294.

robbery. The defendants were tried along with two others, and the three above-named defendants appeal. The appeals were consolidated. *Held:*

1. The trial court did not err in denying the defendants' motions for directed verdicts of acquittal. Sufficient evidence was presented up to the time the motions were made from which the jury could have found that the essential elements of the crime of assault with intent to rob while armed were shown beyond a reasonable doubt as to each of the defendants, either as principals or as aiders and abettors.

2. The evidence was sufficient to show defendant Givens could have been convicted of assault with intent to commit murder. Therefore, the jury properly found him guilty of the lesser offense of assault with intent to do great bodily harm less than murder.

3. None of the defendants were denied their right to a speedy trial.

4. There was no violation of the rule requiring that the prosecution bring a defendant who is incarcerated to trial within 180 days. The rule requires not that trial be concluded within 180 days, but that the prosecution make a good faith effort to ready the case for trial within that time.

5. Defendants Harris and Ragland allege that they should have been granted separate trials. Severance is necessary only where codefendants' defenses are antagonistic to each other. In this case none of the defendants presented defenses which implicated others or cast doubt on other defense theories.

6. The testimony of a witness regarding the opinion of the police as to the involvement of Ragland in the robbery did not violate Ragland's right of confrontation, and, while the statement was hearsay, its introduction was sufficiently cured by an instruction to the jury.

7. A statement made by defendant Givens to an FBI agent was voluntarily made, and the trial court did not err by allowing the agent to testify regarding the statement.

Affirmed.

1. CRIMINAL LAW — DIRECTED VERDICT.

A court ruling on a defendant's motion for a directed verdict of acquittal is to consider the evidence presented up to the time of the motion, view that evidence in a light most favorable to the prosecution, and determine whether a rational trier of fact could find that the essential elements of the crime were proven beyond a reasonable doubt.

2. ASSAULT AND BATTERY — ASSAULT WITH INTENT TO ROB WHILE ARMED.

A conviction of assault with intent to rob while armed requires proof of an assault and an attempt to rob, proof that the defendant was armed, and proof of specific intent, which may be inferred from the circumstances.

3. CRIMINAL LAW — AIDERS AND ABETTORS — SPECIFIC INTENT.

A defendant must have had either the requisite specific intent or known that the actual perpetrator had the required intent in order to be held criminally liable for a specific intent crime as an aider or abettor.

4. ROBBERY — ARMED ROBBERY.

The offense of armed robbery may be perpetrated even though the victim who possessed the stolen property.was not the actual owner of the property, provided the victim had a claim of right superior to that of the robber.

5. ASSAULT AND BATTERY — ASSAULT WITH INTENT TO MURDER.

The crime of assault with intent to commit murder requires proof of an assault with specific intent to murder, which if successful would have made the killing murder.

6. CRIMINAL LAW — SPEEDY TRIAL.

The Court of Appeals looks to four factors in evaluating a defendant's claim of denial of a speedy trial: (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of the right, and (4) the prejudice to the defendant; the length of the delay triggers consideration of the other three factors, and where the delay is less than 18 months prejudice will not be presumed.

7. CONSPIRACY — SPEEDY TRIAL.

Greater delays in trial may be tolerated in complex conspiracy cases than in the prosecution of ordinary street crimes and delays attributable to vigorous and aggressive pretrial tactics must not be considered in derogation of a defendant's right to a speedy trial.

8. CRIMINAL LAW — SPEEDY TRIAL.

Delays inherent in the court system such as docket congestion, while attributable to the prosecution, have a neutral tint and should be given only minimal weight in determining whether a defendant's right to a speedy trial has been violated.

9. CRIMINAL LAW — SPEEDY TRIAL.

A defendant's failure to assert his right to a speedy trial is strong evidentiary support for a finding that a violation of his right has not taken place.

10. CRIMINAL LAW — SPEEDY TRIAL.

The Supreme Court has recognized two types of prejudice accruing from pretrial delay: (1) prejudice to the defendant's person in the form of incarceration or anxiety and concern over the pending charges, and (2) prejudice to the defense from loss of evidence or witnesses.

11. CRIMINAL LAW — PRISONERS — 180-DAY RULE — STATUTES.

There is no requirement that a trial of an outstanding warrant against a defendant who is a prison inmate be concluded within 180 days but rather that the prosecution make a good faith effort to ready the case for trial within that time (MCL 780.131; MSA 28.969[1]).

12. CRIMINAL LAW — SEVERANCE.

Generally, a defendant does not have a right to a separate trial; however, severance is necessary where the defenses of codefendants are antagonistic to each other.

13. CRIMINAL LAW — CODEFENDANTS — CONFESSIONS — RIGHT TO CONFRONTATION.

The use at trial of a codefendant's confession which implicates the defendant denies the defendant the constitutional right of confrontation where the codefendant chooses not to take the stand.

14. WITNESSES — COMPETENCY — CREDIBILITY.

The determination of the competency of a witness is within the sound discretion of the trial court; the credibility of a witness is to be determined by the trier of fact.

15. CRIMINAL LAW — STATEMENTS OF DEFENDANT.

Factors to be considered in determining whether a statement given to police by a defendant was voluntarily made include: (1) the duration and conditions of detention; (2) the manifest attitude of the police toward the accused; (3) the physical and mental state of the accused; and (4) diverse pressures which sap or sustain the accused's powers of resistance or self-control.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Robert E. Weiss,* Prosecuting Attorney, *Donald A. Kuebler,* Chief,

Appellate Division, and *Edwin R. Brown,* Assistant
Prosecuting Attorney, for the people.

*Dolores M. Coulter,* for defendant Harris on
appeal.

*Bruce St. John,* for defendant Ragland on ap-
peal.

*Habeeb Ghattas,* for defendant Givens on ap-
peal.

Before: J. H. GILLIS, P.J., and T. M. BURNS and
N. J. KAUFMAN, JJ.

N. J. KAUFMAN, J. Defendants were each con-
victed by a jury of assault with intent to rob while
armed, MCL 750.89; MSA 28.284. In addition,
defendant Givens was convicted of assault with
intent to do great bodily harm less than murder,
MCL 750.84; MSA 28.279. For the assault with
intent to rob while armed convictions defendants
were each sentenced to prison terms of 30 to 50
years. Defendant Givens was sentenced to a con-
current term of 6-1/2 to 10 years for his additional
conviction. Defendants' convictions arise out of the
June 22, 1979, robbery of the Citizen's Bank in
Flint, in which five individuals, Ragland, Givens,
Harris, Frank Moore and Herbert Hoey were im-
plicated. All five were tried together. Ragland,
Givens and Harris now appeal as of right.

At around noon on the day of the robbery,
Norman Day, a Flint police officer moonlighting as
a security guard at the bank, observed four men
enter the bank. Two of them, Hoey and Givens,
carried sawed-off shotguns, and Day yelled for the
customers to drop to the ground. Hoey fired a shot

into the ceiling and then leveled his shotgun at Day. Day fired three shots at Hoey when Givens shot at Day, sending fragments into his face. Day returned the fire, wounding Givens. As Givens fell to the floor a third man vaulted from behind a teller's cage and ran out the front door. A palm-print identified as that of Ragland was found on the counter of that teller's cage. Day also observed a fourth man run towards a teller's cage located farthest from the door. Day secured the scene until the police arrived. At approximately 2:25 p.m., Flint Police Sergeant David King discovered Harris crouched down in the last teller's booth, where King also found a hat, ski mask and glove. Harris was questioned by FBI agent James Yeager. He explained to Yeager that he jumped over the counter to avoid the shooting and then fell asleep. The fifth individual, Frank Moore, allegedly was driving a getaway car.

Defendants first argue that the trial court erred in denying their motions for directed verdicts at the close of the prosecution's proofs. The proper standard for ruling on a motion for directed verdict was enunciated by the Supreme Court in *People v Hampton,* 407 Mich 354; 285 NW2d 284 (1979). A court is to consider the evidence presented up to the time of the motion, viewed in a light most favorable to the prosecution, and determine whether a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt. *Id.,* 368.

A conviction of assault with intent to rob while armed requires proof of an assault and an attempt to rob, while being armed. *People v Patskan,* 387 Mich 701, 714; 199 NW2d 458 (1972). The offense also requires proof of specific intent, which may be inferred from the surrounding facts. *People v*

*Barnes,* 30 Mich App 586, 589; 186 NW2d 790 (1971).

In the instant case, the evidence indicated that Hoey, Ragland, Givens and Harris entered the bank together and that Hoey and Givens were armed with sawed-off shotguns. Hoey shot into the ceiling and then leveled his gun at Norman Day. Givens fired his weapon in Day's direction. Day testified that he tried to fall backwards just as Givens was advancing toward him in preparation to fire, and that he was only struck by fragments. The testimony and evidence also indicated that Ragland and Harris each went behind the teller's counter, with Harris remaining until well after the incident.

The circumstances demonstrate that two separate assaults took place, the first when Hoey leveled his shotgun at Day and the second when Givens shot at the officer. Moreover, it is evident that these assaults were perpetrated in an attempt to rob the bank and with the specific intent to advance that robbery.

Defendants claim that the crime was incomplete since Ragland and Harris did not personally intend to assault Day and Givens did not personally intend to rob the bank. Givens's claim is not supported by the facts. A trier of fact could reasonably infer that Givens was in the bank with the weapon to perpetrate the robbery. With respect to Ragland and Harris, the argument ignores the fact that they could be found liable for the assaults of Hoey and Givens as aiders and abettors. As stated in *People v Wirth,* 87 Mich App 41, 46-47; 273 NW2d 104 (1978):

"To be held criminally liable for a specific intent crime as an aider or abettor, a defendant must have had either the requisite specific intent or known that

the actual perpetrator had the required intent. *People v Frederick Lester,* 78 Mich App 21; 259 NW2d 370 (1977), *People v Poplar,* 20 Mich App 132; 173 NW2d 732 (1969). Intent is a question of fact to be inferred from the circumstances by the trier of fact. *People v Spry,* 74 Mich App 584; 254 NW2d 782 (1977), *People v Sharp,* 57 Mich App 624; 226 NW2d 590 (1975). It is likewise a factual issue whether a particular act or crime committed was fairly within the intended scope of the common criminal enterprise. *People v Haack,* 396 Mich 367; 240 NW2d 704 (1976), *People v McGuire,* 39 Mich App 308; 197 NW2d 469 (1972), *People v Pearce,* 20 Mich App 289; 174 NW2d 19 (1969), *People v Poplar, supra.* "

From the evidence adduced at trial, the jury could have concluded that all of the defendants had entered into a common enterprise to commit the bank robbery and that each participant was assigned a specific role in the crime. Givens and Hoey carried their weapons openly, allowing the inference that all of the defendants knew that these two intended to commit any assault necessary to ensure the success of the endeavor. Thus, a rational trier of fact could have found defendants Ragland and Harris guilty on an aiding and abetting theory.

Defendants also contend that the prosecution had to show that they intended to rob Day, the assaulted party, and not another individual or the bank. We disagree. The statute in question does not specify that "the intent to rob" be directed at the person assaulted. A more reasonable interpretation would be that the assault be committed as a means to further the intended robbery, be it of the assaulted person or another. This Court has previously noted that the offense of armed robbery may be perpetrated even though the victim possessing the stolen property is not the actual owner, pro-

vided that the victim has a claim of right superior to that of the robber. *People v Needham,* 8 Mich App 679, 683-684; 155 NW2d 267 (1967). The instant situation is an analogous one. Although Norman Day was neither the owner nor possessor of the funds intended to be taken, his presence and determination to prevent the robbery stood as an obstacle to its successful completion. The assaults were not gratuitous or committed on whim but rather to perpetrate the robbery. We interpret such an assault to fall within the statutory language.

Finally, we find without merit defendant Harris's contention that there was insufficient evidence to connect him with the crime. Norman Day testified that one of the perpetrators ran to a far teller's cage, the same location where Harris was found crouching nearly two and one-half hours later. There was testimony that the scene was noisy during the intervening period, casting doubt on Harris's claim that he slept after the robbery. Finally, photographs taken during the incident show Harris standing in the teller's booth looking toward the bank exit, contrary to his contention that he jumped over the counter and hid. The jury could have concluded that Harris's claim of innocence was a fabrication and that all three of these defendants were guilty beyond a reasonable doubt of assault with intent to rob while armed.

With regard to the charge against Givens of assault with intent to commit murder, the prosecution was required to prove an assault with specific intent to murder, which if successful would have made the killing murder. *People v Eisenberg,* 72 Mich App 106, 114; 249 NW2d 313 (1976). Here, Norman Day's testimony indicated that Givens approached him, pointed a shotgun at his face and

discharged the weapon. Day testified that he tried to fall backwards just prior to the shot. The jury could have inferred that it was only that motion that prevented his death. The circumstances, in particular, the use of the shotgun, indicate that Givens intended to murder Day. Although the jury chose to convict Givens of a lesser offense, a rational trier of fact could have found all of the elements of assault with intent to commit murder proven beyond a reasonable doubt.

Defendants next argue that they were denied the right to a speedy trial. While Givens and Harris were arrested on the day of the offense and Ragland within two weeks afterwards, trial did not commence until March 25, 1980, approximately nine months after the crime. Ragland and Harris remained incarcerated in the county jail pending trial. Givens was likewise held until August 16, 1979, when he was sentenced in Oakland County to a term of 16 to 24 months for an unrelated offense.

In evaluating speedy trial claims, the Michigan Supreme Court has adopted the rule of *Barker v Wingo,* 407 US 514; 92 S Ct 2182; 33 L Ed 2d 101 (1972). *People v Grimmett,* 388 Mich 590; 202 NW2d 278 (1972), *People v Missouri,* 100 Mich App 310; 299 NW2d 346 (1980), *People v Goode,* 106 Mich App 129; 308 NW2d 448 (1981). The test necessitates an ad hoc balancing of four factors: length of the delay, reason for the delay, the defendant's assertion of his right, and prejudice to the defendant.

The length of the delay is viewed as a triggering mechanism for consideration of the other factors. *People v Collins,* 388 Mich 680, 688-689; 202 NW2d 769 (1972), *People v Hammond,* 84 Mich App 60, 67; 269 NW2d 488 (1978), *People v Classen,* 50

Mich App 122, 126; 212 NW2d 783 (1973). Here, the delay was approximately nine months, well within the 18-month limit after which prejudice is presumed. *People v Grimmett, supra,* 606. Moreover, even after consideration of the other three factors, the delay here cannot be seen as prejudicial.

A number of principles have evolved for reviewing the reasons for pretrial delays. In complex cases, such as those alleging conspiracy or involving multiple defendants, greater delays will be tolerated than in the prosecution of ordinary street crimes. *Barker v Wingo, supra,* 530-531. Delays attributable to vigorous and aggressive pretrial tactics will not be considered in derogation of the speedy trial right. *People v Collins, supra,* 690-692, *People v Cutler,* 86 Mich App 118, 126; 272 NW2d 206 (1978), *People v Hammond, supra,* 67, *People v Classen, supra,* 126. Finally, delays inherent in the court system, such as docket congestion, are attributable to the prosecution. However, such delays are of a neutral tint and are given only minimal weight in determining whether the right to speedy trial has been violated. *Barker v Wingo, supra, People v Forrest,* 72 Mich App 266, 270-271; 249 NW2d 384 (1976).

The reasons for the delay here were valid ones. The primary reason for the delay was the relative complexity of the case. It involved five defendants, and 48 witnesses eventually testified at trial. Defendant Ragland raised an alibi defense and defendant Givens the defense of intoxication, both necessitating additional prosecutorial investigation and preparation. In August of 1979, defendant Givens was sentenced in Oakland County for another offense, causing some additional delays. Trial was originally set for December 4, 1979, but was

adjourned following defense and prosecutorial motions concerning whether defendants would be tried jointly or separately. Further pretrial motions were filed by defendant Ragland on January 10, 1980, and argument heard on January 28, 1980. Finally, some delay resulted from the crowded nature of the trial court's docket. None of the delay appears to have resulted from deliberate footdragging on the part of the prosecution.

Defendants did not assert their right to a speedy trial until the day before trial took place. A defendant's claim that his speedy trial right has been denied is heavily offset by a failure to assert that right. *People v Bailey,* 101 Mich App 144, 150; 300 NW2d 474 (1980), *People v Hammond, supra.* These defendants were either unconcerned with the delay or chose to remain silent to build error into the record. *People v Cutler, supra,* 126-127; *People v Classen, supra,* 127.

None of the defendants have demonstrated that they have been especially prejudiced by the delay. Our courts recognize two types of prejudice arising from pretrial delay: (1) prejudice to the defendant's person in the form of incarceration or anxiety over the pending charges; and (2) prejudice to the defense from loss of evidence or witnesses. *People v Chism,* 390 Mich 104, 114; 211 NW2d 193 (1973), *People v Collins, supra,* 694, *People v Ewing,* 101 Mich App 51, 56; 301 NW2d 8 (1980).

Here, defendants were incarcerated while awaiting trial, although in defendant Givens's case, he was in custody for another conviction after August 16, 1979. Defendants can be presumed to have suffered some anxiety and stress while awaiting the outcome of this case. Nonetheless, there is no indication that any of the defendants have suffered the more serious form of prejudice to their defen-

ses. There has been no showing that evidence has been lost or that witnesses have become unavailable.

Balancing the four factors of *Barker v Wingo, supra,* we conclude that defendants have not been denied their right to a speedy trial, particularly in light of their failure to assert that right with any diligence.

We also find without merit defendants' claim that the delay here violated the 180-day rule. MCL 780.131; MSA 28.969(1).[1] The rule does not require that a defendant's trial be concluded within 180 days, but that the prosecution make a good faith effort to ready the case for trial within that time. *People v Hill,* 402 Mich 272, 281; 262 NW2d 641 (1978). The circumstances here indicate that such a good faith effort was made. Moreover, the initial effort was not followed by any inexcusable delay evidencing an intent not to bring the case to trial promptly. *People v Moore,* 96 Mich App 754, 758; 293 NW2d 700 (1980).

Defendants Ragland and Harris's next appellate claim is that the trial court erred in denying their motions for separate trials. The general rule is that a defendant does not have a right to a sepa-

[1] "Whenever the department of corrections shall receive notice that there is pending in this state any untried warrant, indictment, information or complaint setting forth against any inmate of a penal institution of this state a criminal offense for which a prison sentence might be imposed upon conviction, such inmate shall be brought to trial within 180 days after the department of corrections shall cause to be delivered to the prosecuting attorney of the county in which such warrant, indictment, information or complaint is pending written notice of the place of imprisonment of such inmate and a request for final disposition of such warrant, indictment, information or complaint. The request shall be accompanied by a statement setting forth the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner and any decisions of the parole board relating to the prisoner. The written notice and statement provided herein shall be delivered by certified mail."

rate trial; joinder is usually within the discretion of the trial court. However, severance is necessary when the defenses of the several defendants are antagonistic to each other. *People v Hurst,* 396 Mich 1; 238 NW2d 6 (1976).

The instant case simply did not involve antagonistic defenses among the various defendants. Defendants Hoey and Moore did not put forth specific defenses and called no witnesses. Defendant Ragland presented an alibi defense, testifying that he was practicing with a band at the time of the offense. Defendant Harris denied involvement in the robbery, testifying that he was in the bank to get change for a $20 bill and hid behind the teller's counter when the shooting started. Counsel for defendant Givens argued an intoxication defense after three defense witnesses testified to Givens's apparent alcoholism. None of the defendants presented testimony or defenses that implicated others or otherwise cast doubt on other defense theories. We can only conclude that joinder was appropriate in this case.

Defendant Ragland next argues that he was denied the right of confrontation by certain hearsay testimony of witness Gloria Mae Hawkins. Ms. Hawkins, who lived with codefendant Frank Moore at the time of the robbery, talked with Moore after the robbery and then made a statement to the police concerning the conversation. Moore apparently implicated himself in the conversation and made reference to a report of Ragland's involvement. Ms. Hawkins was questioned about her conversation with Moore, but avoided repeating anything to implicate Moore. The prosecutor then showed Ms. Hawkins her own statement to the police to refresh her memory and asked her again about her conversation with

Moore. Ms. Hawkins then related that Moore had told her that "Aaron [was] supposed to have jumped over the bank counter". Counsel for Ragland objected and the jury was subsequently instructed to disregard the statement.[2]

Ragland contends that the reference violated the rule of *Bruton v United States,* 391 US 123; 88 S Ct 1620; 20 L Ed 2d 476 (1968). In *Bruton,* the prosecutor elicited evidence of a codefendant's confession which implicated the appellant as well. The codefendant did not take the stand and the trial judge gave a curative instruction stating that the confession could not be used against the non-confessing defendant. The Supreme Court reversed, holding that the use of a codefendant's confession denies a defendant the constitutional right of confrontation where the codefendant chooses not to take the stand.[3] The Court concluded that the trial court's attempt to limit the use of the confession was an inadequate substitute for the defendant's right of confrontation.

[2] "During the testimony of Gloria Hawkins, members of the jury, a statement was made inadvertently concerning Aaron Ragland and his possible participation in the charged offenses. Such statement is not to be considered by you in determining the innocence or guilt of Aaron Ragland and should be dismissed from your minds as if this statement was never made."

[3] "[T]here are some contexts in which the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored. * * * Such a context is presented here, where the powerfully incriminating extrajudicial statements of a codefendant, who stands accused side-by-side with the defendant, are deliberately spread before the jury in a joint trial. Not only are the incriminations devastating to the defendant but their credibility is inevitably suspect, a fact recognized when accomplices do take the stand and the jury is instructed to weigh their testimony carefully given the recognized motivation to shift blame onto others. The unreliabililty of such evidence is intolerably compounded when the alleged accomplice, as here, does not testify and cannot be tested by cross-examination. It was against such threats to a fair trial that the Confrontation Clause was directed." 391 US 123, 135-136. (Citations omitted.)

The present situation is distinguishable from that in *Bruton,* inasmuch as the offending statement did not amount to an actual confession. Rather, Moore was reported to have told Ms. Hawkins that Ragland was "supposed" to have jumped over the bank counter. It is important to consider the context of the statement. It was made when Moore was telling Ms. Hawkins of the accusations made against him and the other defendants by the police. In other words, *according to the police* Ragland was supposed to have participated in the robbery. Thus, the statement was not at all a "powerfully incriminating extrajudicial statement" of codefendant Moore, and we cannot conclude that its elicitation resulted in incurable prejudice to the defendant.

Nonetheless, the accusations of the police were out-of-court statements, essentially by unknown declarants. To the extent the particular statement may have been considered as proof of Ragland's involvement, it was hearsay. We believe the trial court's instruction was sufficient to prevent the jurors from considering the statement with regard to defendant Ragland. However, even absent a curative instruction, the error here was harmless beyond a reasonable doubt since the same facts were shown by other competent testimony. *People v Hoerl,* 88 Mich App 693, 702; 278 NW2d 721 (1979), *People v Vargas,* 50 Mich App 738, 741-742; 213 NW2d 848 (1973). During trial, Norman Day testified that one of the men vaulted over a teller's cage. It was also revealed that Ragland's palmprint was left on the teller's cage in question. In view of this other competent evidence, the admission of the testimony of Ms. Hawkins did not constitute reversible error.

Defendant Ragland next argues that the trial

court erred reversibly by refusing to suppress testimony of witness Sheila Jones or grant a mistrial based on her testimony. Ms. Jones testified that she saw defendants Moore and Ragland with a hacksaw blade, and later with sawed-off shotguns, the night before the robbery. She also indicated that she drove Ragland and a wounded man to Detroit after the robbery. However, Ms. Jones admitted to having lied to the police and to having lied while under oath at the preliminary examination.

The determination of the competency of a witness is a matter within the sound discretion of the trial court. *People v Atcher,* 65 Mich App 734, 740; 238 NW2d 389 (1975). Here, Ms. Jones conceded that she had lied in the past, including while testifying regarding the present case. While the admission certainly called Ms. Jones's credibility into question, it did not render her testimony incompetent. The credibility of a witness is a matter to be determined by the trier of facts who hears and sees the witness. *People v Strunk,* 11 Mich App 99, 103; 160 NW2d 602 (1968). The trial court did not abuse its discretion in refusing to suppress Ms. Jones's testimony.

The final issue on appeal, raised by defendant Givens, is whether the trial court erred in permitting FBI agent James S. Yeager to testify regarding a statement made by Givens while in a hospital emergency room. When questioned by agent Yeager, Givens admitted complicity in the robbery. Givens now argues that the statement was not voluntarily made.

In considering whether a statement was voluntarily made, this Court reviews the entire record and makes an independent determination of voluntari-

ness. *People v Robinson,* 386 Mich 551; 194 NW2d 709 (1972). Factors to be considered include: (a) the duration and conditions of detention; (b) the manifest attitude of the police toward the accused; (c) the physical and mental state of the accused; and (d) diverse pressures which sap or sustain the accused's powers of resistance or self-control. *People v Johnson,* 99 Mich App 547, 554-555; 297 NW2d 713 (1980), *People v Allen,* 8 Mich App 408, 412; 154 NW2d 570 (1967), citing *Culombe. v Connecticut,* 367 US 568; 81 S Ct 1860; 6 L Ed 2d 1037 (1961).

Here, Givens's statement was taken in the hospital emergency room where he was being treated for a gunshot wound to his arm. The record does not reflect whether Givens had received any medication, although Yeager stated that he smelled alcohol on the defendant's breath. At the time, Givens was receiving a blood transfusion. It is apparent that the duration of the detention was brief and that the conditions were not such to have rendered the statement involuntary. Yeager indicated that Givens appeared to understand what was happening and that he did not seem to be under the influence of either alcohol or medication. Defendant was informed of his *Miranda*[4] rights and waived them orally. There was no evidence that the manifest attitude of the police was such as to coerce a statement. Considering these circumstances in their entirety, we can only infer that defendant Givens's statement to Yeager was voluntarily made. The trial court did not err in permitting Yeager to testify concerning the statement.

Affirmed.

---

[4] *Miranda v Arizona,* 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694; 10 ALR3d 974 (1966).