# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
December 2, 2014

Plaintiff-Appellee,

v

No. 314200
Calhoun Circuit Court
LC No. 2012-003481-FC

LEON DAVID FINNIE, JR.,

Defendant-Appellant.

Before: OWENS, P.J., and MARKEY and SERVITTO, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of assault with intent to commit murder, MCL 750.83; torture, MCL 750.85; and two counts of unlawful imprisonment, MCL 750.349b. He was sentenced to concurrent terms of 20 to 40 years' imprisonment for the assault with intent to commit murder conviction, 20 to 40 years for the torture conviction, and 8 to 15 years for each of the unlawful imprisonment convictions. Because there was sufficient evidence to convict defendant of assault with intent to murder, the trial court did not abuse its discretion in admitting expert testimony or allowing the late endorsement of a rebuttal witness, and defendant was not denied his right to a speedy trial, we affirm.

In November 2010, defendant ordered DeQuan Guest, whom he had known since childhood, to get into a vehicle, after which defendant drove him to a house at 11 Laramie Court in Battle Creek. There, defendant pushed Guest onto a couch and began to question him about his possible involvement in a robbery at the home of defendant's sister. Defendant punched Guest several times in the head and told him to empty his pockets and to take off his clothes. Defendant then told Guest to lie face down on the ground, after which Guest's legs, arms, and hands were bound, and duct tape was placed over his mouth. Defendant and a co-defendant kicked and stomped Guest. Defendant pulled Guest up so that he was on his knees and a co-defendant struck Guest in the head more than five times with a baseball bat-like object, which caused Guest to lose consciousness momentarily. Defendant took Guest into the kitchen and told his co-defendants to push him down the basement stairs. Someone pushed Guest down the stairs, and once Guest was at the bottom of the stairs, he saw his friend, Dontae Shuford, in the basement as well. Shuford was bound and gagged and his face bore injuries consistent with having been pistol-whipped. Defendant entered the basement and poured a pot of boiling water over Guest's face, then hit Guest on the chest with a broom handle. Guest and Shuford were left in the basement for several hours before garbage bags were placed over them and they were

-1-

driven to a pole barn in a rural area, where they were left outside in the cold. Guest was able to remove the duct tape from his mouth and garbage bag from his head and after yelling for help for nearly an hour, a nearby resident located him and Shuford.

Defendant first argues that insufficient evidence existed to support his assault with intent to commit murder conviction. When reviewing a challenge to the sufficiency of the evidence, this Court reviews the record de novo. *People v Roper*, 286 Mich App 77, 83; 777 NW2d 483 (2009). We review evidence in the light most favorable to the prosecution and determine whether a rational trier of fact could have found that the essential elements of the crime were proved beyond a reasonable doubt. *Id.*

"The elements of assault with intent to commit murder are (1) an assault, (2) with an actual intent to kill, (3) which, if successful, would make the killing murder." *People v Lawton*, 196 Mich App 341, 350; 492 NW2d 810 (1992). In addition, one who aids and abets in the commission of a crime may be prosecuted, convicted, and sentenced as if he had directly committed the offense. MCL 767.39. See also, *People v Jackson*, 292 Mich App 583, 589; 808 NW2d 541 (2011).

We find that sufficient evidence existed in the record for a rational trier of fact to conclude that each element of this charge was satisfied beyond a reasonable doubt. The evidence established that defendant brought Guest to the house at 11 Laramie Court, against his will and immediately began assaulting and battering him, thus satisfying the first element of the crime. Guest testified that that defendant punched him several times in the head, then tied him up and, while he was bound, kicked and stomped him about his body, and poured boiling water on his head. These acts clearly constitute assault upon Guest by defendant. See, *People v Cameron*, 291 Mich App 599, 614; 806 NW2d 371 (2011). The evidence also established that defendant assisted his co-defendants with the intent to commit an assault because defendant held Guest up for his co-defendant to hit him with a baseball bat-like object multiple times and he thereafter told his co-defendants to push Guest down the basement stairs, which constituted a battery and thus an assault. *Cameron*, 291 Mich App at 614.

The evidence also established the second element, that of an actual intent to kill. *Lawton*, 196 Mich App at 350. Intent may be inferred from minimal circumstantial evidence and the reasonable inferences that arise from the evidence. *People v Hawkins*, 245 Mich App 439, 458 628 NW2d 105 (2001). Intent to kill may reasonably be inferred from the brutality and length of the beating that the victim suffered. See, e.g., *People v Hoffmeister*, 394 Mich 155, 160; 229 NW2d 305 (1975). The brutal nature of the attacks on Guest, combined with binding him and leaving him wet and mostly naked in a garbage bag outside on a winter night in a rural area give rise to an inference that defendant intended to kill Guest. *People v Taylor*, 422 Mich 554, 568; 375 NW2d 1 (1985).

Finally, defendant's acts were not justifiable or excusable; therefore, if successful, the killing would have been murder. Thus, sufficient evidence existed to support defendant's assault with intent to commit murder conviction. See, *People v Hoffman*, 225 Mich App 103, 111; 570 NW2d 146 (1997).

-2-

Defendant next argues that testimony from an expert regarding the location of defendant's cellular telephone during the day of the kidnapping and assault was improperly admitted. We first note that defendant makes no argument that the expert was improperly qualified as an expert under MRE 702. Thus, any attempt to challenge the expert's qualification as an expert on cellular data analysis is wholly abandoned. *People v Anderson*, 209 Mich App 527, 538; 531 NW2d 780 (1995).

Defendant cites to MRE 702 and posits his analysis as based upon whether the testimony offered was based upon reliable principles and methods. However, defendant specifically takes issue with the testimony that calls on defendant's phone originated or ended within the sector or sectors containing the cell phone towers where the crime scenes took place when, according to defendant, the sector or sectors at issue cover a large amount of the north part of the city of Battle Creek. Defendant argues that the expert gave the jury the impression that he was conveying more than the fact that defendant was in the northern part of Battle Creek at the time of the incidents at issue and that this information had no evidentiary value. Defendant is thus not challenging the methods or principles used by the expert in conducting his analysis, per se, but is challenging the completeness and relevancy (i.e.,admissibility under MRE 402) of the expert's testimony.

The completeness of the expert's testimony is a matter that could have been addressed on cross-examination and further goes to the weight of the evidence rather than its admissibility. See, e.g., *Surman v Surman*, 277 Mich App 287, 309; 745 NW2d 802 (2007)("... an opposing party's disagreement with an expert's opinion or interpretation of facts, present [an] issue[] regarding the weight to be given the testimony, and not its admissibility."). As to relevancy, " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *Hawkins*, 245 Mich App at 449, quoting MRE 401. When identity is at issue, evidence pertaining to a defendant's identity is relevant. *People v Baker*, 114 Mich App 524, 529; 319 NW2d 597 (1982). Testimony placing a defendant near the scene of a crime around the time the crime occurred is also relevant under MRE 401. *People v Prast*, 114 Mich App 469, 489; 319 NW2d 627 (1982).

In this case, whether defendant was present at 11 Laramie Court or the barn where Guest and Shuford were found was at issue. The expert testified that calls registering hits from defendant's cellular telephone during the day of the kidnapping and assault originated from the sector in which 11 Laramie Court was located. The expert also testified that calls registering hits from defendant's cellular telephone during the night of the underlying incident originated from the sector in which the barn was located. This evidence was relevant because it allowed the jury to circumstantially infer, in combination with Guest's testimony, that defendant, the owner of the cellular telephone, was present making calls during the relevant time periods at 11 Laramie Court and in the area of the barn. This evidence made it more probable that defendant was near the scenes of the crime and was involved in the crime. MRE 401. In addition, the evidence's probative value was not substantially outweighed by the danger of unfair prejudice. MRE 403.

Defendant also argues that he was denied his right to a speedy trial. "The determination whether a defendant was denied a speedy trial is a mixed question of fact and law." *People v Waclawski*, 286 Mich App 634, 664; 780 NW2d 321 (2009). "The factual findings are reviewed

for clear error, while the constitutional issue is a question of law subject to review de novo." *Id.* "Both the United States Constitution and the Michigan Constitution guarantee a criminal defendant the right to a speedy trial." *Id.* at 665. "In determining whether a defendant has been denied this right, this Court applies a four-part balancing test." *Id.* We consider (1) the length of delay, (2) the reason for delay, (3) the defendant's assertion of the right, and (4) the prejudice to the defendant. *Id.* (punctuation and citation omitted). Prejudice is presumed if the delay is more than 18 months and, in such cases, the burden shifts to the prosecutor to prove that there was no injury. *People v Williams*, 475 Mich 245, 262; 716 NW2d 208 (2006). Conversely, where, as here, defendant experienced a delay under 18 months, the delay is not presumptively prejudicial, and the burden is on the defendant to establish prejudice. *People v Patton*, 285 Mich App 229, 236 n 4; 775 NW2d 610 (2009).

There are two types of prejudice a defendant may experience: (1) prejudice to his person and (2) and prejudice to the defense. *Williams*, 475 Mich at 263. "[G]eneral allegations of prejudice are insufficient to establish that [a defendant] was denied his right to a speedy trial." *People v Gilmore*, 222 Mich App 442, 462; 564 NW2d 158 (1997). Moreover, because prejudice to the defense is a "more serious concern" than prejudice to the person, the prejudice prong may still weigh against a defendant incarcerated for a long period if his defense was not prejudiced by the delay. *Williams*, 475 Mich at 264.

Here, defendant argues that prejudice to his person was established because the 14-15 month delay in proceeding to trial cost him $25,000 in attorney fees and made it so he could not have confidential communications with anyone except his attorney. However, defendant has not explained if or how he was burdened by the $25,000 in attorney fees, and general allegations of a financial burden are insufficient to support a finding of prejudice. *Gilmore*, 222 Mich App at 462. Moreover, defendant does not explain how being unable to have confidential communications with anyone except his attorney prejudiced his person and cites no law in support of his assertion that this establishes prejudice. Defendant argues that prejudice to his defense was established because of "the possibility that various witness[es] would invoke their privilege against self incrimination or would not appear." However, defendant does not specify which, if any, persons did not appear or invoked their privilege against self-incrimination in order to avoid testifying, and "[t]here has been no showing that evidence has been lost or that witnesses have become unavailable." *People v Harris*, 110 Mich App 636, 648; 313 NW2d 354 (1981). Thus, although defendant was incarcerated for over a year, defendant has not met his burden of establishing prejudice. *Waclawski*, 286 Mich App at 665. We therefore find that defendant's right to a speedy trial was not violated.

Defendant finally argues that the trial court erred in endorsing one of defendant's co-defendants, Britten McNutt, as a rebuttal witness during trial. We review a trial court's late endorsement of a rebuttal witness for an abuse of discretion. *People v Travis*, 443 Mich 668, 679-680; 505 NW2d 563 (1993). An abuse of discretion exists when "the trial court's decision falls outside the range of principled outcomes." *People v Gipson*, 287 Mich App 261, 262; 787 NW2d 126 (2010).

Defendant filed an alibi defense on November 21, 2012. Pursuant to MCL 768.20(2):

-4-

Within 10 days after the receipt of the defendant's notice but not later than 5 days before the trial of the case, or at such other time as the court may direct, the prosecuting attorney shall file and serve upon the defendant a notice of rebuttal which shall contain, as particularly as is known to the prosecuting attorney, the names of the witnesses whom the prosecuting attorney proposes to call in rebuttal to controvert the defendant's defense at the trial of the case.

It is undisputed that Britten McNutt was not identified as a witness by the prosecution until the last day of trial. In determining whether a trial court abused its discretion in allowing the testimony of an alibi rebuttal witness when notice under MCL 768.20 was untimely, we consider: (1) the amount of prejudice that resulted from the failure to disclose, (2) the reason for nondisclosure, (3) the extent to which the harm caused by nondisclosure was mitigated by subsequent events, (4) the weight of the properly admitted evidence supporting the defendant's guilt, and (5) other relevant factors arising out of the circumstances of the case. *Travis*, 443 Mich at 682 (citation omitted). Applying the above factors, we find that the trial court did not abuse its discretion in admitting McNutt's testimony. Although defendant's ability to cross-examine McNutt may have been somewhat impacted, the evidence of defendant's guilt was strong given Guest's testimony, and defense counsel admitted at trial that defendant would not have changed his alibi defense or presented an alternative defense theory even if he was aware that McNutt was testifying. Moreover, defense counsel was aware of McNutt's existence and was aware of the possibility that he might testify. In addition, the prosecution only learned that McNutt was willing to testify the day before he was called as a witness, and the trial court allowed defense counsel to interview McNutt before he testified. Thus, under these circumstances, the trial court did not abuse its discretion in allowing the late endorsement of the rebuttal witness.

Affirmed.

/s/ Donald S. Owens
/s/ Jane E. Markey
/s/ Deborah A. Servitto