*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

UNPUBLISHED
December 12, 2019

v

RICHARD EUGENE GRAY,

Defendant-Appellant.

No. 342111
Oakland Circuit Court
LC No. 2017-263498-FC

Before: BECKERING, P.J., and BORRELLO and M. J. KELLY, JJ.

PER CURIAM.

Defendant, Richard Gray, appeals as of right his jury-trial convictions of armed robbery, MCL 750.529, and assault with intent to rob while armed, MCL 750.89. We affirm Gray's convictions and sentences, but remand for the ministerial task of correcting a clerical error in the judgment of sentence.[1]

## I. BASIC FACTS

Gray's convictions arise from the armed robbery of his 43-year-old quadriplegic son, Erwin Sharpe, and the assault of Erwin's maternal aunt and caregiver, Latania Sharpe, in Erwin's Southfield home on the afternoon of July 2, 2016. According to Latania's testimony, Gray entered the home unannounced and pointed a handgun at Latania and then Erwin, who was sitting in his motorized wheelchair. Erwin asked Gray if he needed money and, following Erwin's instructions, Latania gave Gray approximately $180 from Erwin's left pocket. While still pointing the gun, Gray directed Latania to remove a safe from Erwin's bedroom closet.

---

[1] Although Gray was convicted of one count of armed robbery and one count of assault with intent to rob while armed, his judgment of sentence erroneously states that he was convicted of two counts of armed robbery. Accordingly, we remand for correction of the judgment of sentence to reflect that he was convicted of one count of armed robbery and one count of assault with intent to rob while armed. See MCR 7.216(A)(7).

-1-

Gray proceeded to pat down Erwin's pockets, and he took approximately $4,000 from Erwin's other pocket. Latania removed the safe, but when she was unable to open it, Gray asked her if she "want[ed] to take a MF bullet?" After Latania repeated that she was unable to open it, Gray took the safe and fled. Video footage from Erwin's home security cameras depicted Gray with a handgun and later carrying the safe. The defense denied that Gray committed a robbery or pointed the gun, contending that Latania's version of events lacked credibility and emphasizing that the video did not have audio.

## II. SUBSTITUTE LAWYER

### A. STANDARD OF REVIEW

Gray argues that the trial court abused its discretion by refusing to appoint a substitute lawyer, and by failing to adequately investigate the nature of the breakdown in the attorney-client relationship. We review for an abuse of discretion the trial court's decision to deny a criminal defendant's request for a substitute lawyer. *People v Strickland*, 293 Mich App 393, 397; 810 NW2d 660 (2011). "A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes." *Id*.

### B. ANALYSIS

"An indigent defendant is guaranteed the right to counsel; however, he is not entitled to have the attorney of his choice appointed simply by requesting that the attorney originally appointed be replaced." *People v Traylor*, 245 Mich App 460, 462; 628 NW2d 120 (2001) (quotation marks and citation omitted). "Appointment of a substitute counsel is warranted only upon a showing of good cause and where substitution will not unreasonably disrupt the judicial process." *Id*. (quotation marks and citation omitted). "Good cause may exist when a legitimate difference of opinion develops between a defendant and his appointed counsel as to a fundamental trial tactic, when there is a destruction of communication and a breakdown in the attorney-client relationship, or when counsel shows a lack of diligence or interest." *People v McFall*, 309 Mich App 377, 383; 873 NW2d 112 (2015) (quotation marks and citations omitted). Conversely, "[a] mere allegation that a defendant lacks confidence in his or her attorney, unsupported by a substantial reason, does not amount to adequate cause. Likewise, a defendant's general unhappiness with counsel's representation is insufficient." *Strickland*, 293 Mich App at 398.

Gray first asserts that the trial court erred because it did not adequately inquire into the reasons for his dissatisfaction with his lawyer. Gray's assertion is unsupported by the record. At the pretrial hearing, the trial court gave Gray an opportunity to place his complaints about his lawyer's alleged inadequacies on the record. The court later invited Gray to "let [it] know" if any grievances against Gray's lawyer arose as the proceedings continued. Thus, it is clear that the court's inquiry was sufficient for it to evaluate the merits of Gray's request, and it further permitted later arguments should the alleged breakdown of the attorney-client relationship persist.

-2-

Next, Gray has failed to demonstrate good cause for the appointment of a substitute lawyer. Gray expressed dissatisfaction with his lawyer because his lawyer "had not addressed his issues," and because his lawyer did not contact defense witnesses that Gray had recommended. However, there is no indication in the record that Gray's lawyer was unprepared. Instead, the record reflects that Gray's lawyer was fully aware of the facts of the case, which was not overly complex, and indicated to both the district court and the trial court that he was prepared and ready to proceed. Further, although Gray complains that his lawyer failed to contact "witnesses," he has not explained who the witnesses would have been or what testimony they could have provided. Further, a lawyer's "decisions about defense strategy, including what evidence to present and what arguments to make, are matters of trial strategy, and disagreements with regard to trial strategy or professional judgment do not warrant appointment of substitute counsel." *Strickland*, 293 Mich App at 398 (citation omitted). Consequently, the trial court did not abuse its discretion by denying Gray's request for a new lawyer.

## III. ANONYMOUS JURY

### A. STANDARD OF REVIEW

During voir dire and trial, the prospective jurors and jurors were primarily referred to by number and not by name. Gray argues that, in doing so, the court violated his constitutional right to due process by using an anonymous jury. Because Gray did not object to the use of numbers to identity members of the jury venire and the jury, this issue is unpreserved. See *People v Carines*, 460 Mich 750, 761; 597 NW2d 130 (1999). We therefore review this unpreserved constitutional claim for plain error affecting defendant's substantial rights. *Id.* at 763.

### B. ANALYSIS

A trial court's practice of referring to jurors by numbers instead of names potentially involves the use of an "anonymous jury," which this Court has defined as "one in which certain information is withheld from the parties, presumably for the safety of the jurors or to prevent harassment by the public." *People v Williams*, 241 Mich App 519, 522; 616 NW2d 710 (2000). The use of an anonymous jury implicates two interests: "(1) the defendant's interest in being able to conduct a meaningful examination of the jury and (2) the defendant's interest in maintaining the presumption of innocence." *Id*. at 522-523. An anonymous jury is "where something more than just the jurors' names is withheld from the parties" and is only actually implicated if "certain biographical information" is also withheld. *People v Hanks*, 276 Mich App 91, 93; 740 NW2d 530 (2007). Ultimately, "[a] challenge to an 'anonymous jury' will only succeed where the record reflects that withholding information precluded meaningful voir dire or that the defendant's presumption of innocence was compromised." *Id*.

In this case, the trial court informed the parties of its practice of referring to jurors by number rather than name, and requested that the parties adhere to this procedure. Yet, the record suggests that the jurors and prospective jurors' names were, in fact, available to the parties. For example, during voir dire, the trial court used a prospective juror's name on the record— apparently to get the prospective juror's attention—and the court instructed the court clerk to look at the individual's name. Moreover, even if the names were unavailable to the defense, it is apparent that the jurors and prospective jurors' biographical information was not withheld from

the defense. During voir dire, the prospective jurors shared biographical information, including their employment status, marital status, spouses' employment status, education level, whether they had children, and the ages of their children. Further, there is nothing in the record to indicate that the use of numbers undermined the presumption of innocence. And although the trial court did not provide a specific instruction regarding the use of numbers to identify jurors on the record, the court twice instructed the jury that Gray was presumed innocent. Accordingly, Gray has not established that a plain error occurred.

## IV. SUFFICIENCY OF THE EVIDENCE

### A. STANDARD OF REVIEW

Gray next argues that there was insufficient evidence to support his conviction of assault with intent to rob while armed. We review de novo a challenge to the sufficiency of the evidence. *People v Bailey*, 310 Mich App 703, 713; 873 NW2d 855 (2015). When ascertaining whether sufficient evidence was presented at trial to support a conviction, this Court must view the evidence in a light most favorable to the prosecution and determine whether a rational trier of fact could find that the essential elements of the crime were proven beyond a reasonable doubt. *People v Reese*, 491 Mich 127, 139; 815 NW2d 85 (2012). This Court will not interfere with the trier of fact's role of determining issues of weight and credibility. *People v Unger*, 278 Mich App 210, 222; 749 NW2d 272 (2008).

### B. ANALYSIS

"The elements of assault with intent to rob while armed are: (1) an assault with force and violence; (2) an intent to rob or steal; and (3) the defendant's being armed. Because this is a specific-intent crime, there must be evidence that the defendant intended to rob or steal." *People v Akins*, 259 Mich App 545, 554; 675 NW2d 863 (2003) (quotation marks and citation omitted). Assault is either an attempt to commit a battery or an unlawful act that places another in reasonable apprehension of receiving an immediate battery. *People v Meissner*, 294 Mich App 438, 453-454; 812 NW2d 37 (2011). There is no requirement that the defendant's intent to rob be directed at the person assaulted. *People v Harris*, 110 Mich App 636, 643-644; 313 NW2d 354 (1981).

Here, Latania testified that Gray pointed a gun at her and threatened to shoot her. She stated that Gray demanded money from Erwin and made her get it from Erwin's pocket and pass it to him. He also forced her to get a safe from a closet, and he took the safe with him when he left the premises. Viewing this evidence in the light most favorable to the jury's verdict, there is sufficient evidence to establish that Gray assaulted Latania when he pointed a gun at her and threatened to shoot her, and there is sufficient evidence to establish that when he did so he had an intent to rob Erwin. Because the statute does not require that a defendant have an intent to rob the same person that the defendant assaults, Gray's claim of error is without merit.

## V. STANDARD 4 BRIEF

In a pro se supplemental brief filed pursuant to Supreme Court Administrative Order No. 2004-6, Standard 4, Gray raises additional issues, which we address in turn.

## A. PRELIMINARY EXAMINATION

Gray argues that his convictions should be reversed and the case dismissed because his preliminary examination was not held within 21 days after his arraignment. We disagree. MCL 766.4(1) requires a court to "set a date for a probable cause conference to be held not less than 7 days or more than 14 days after the date of the arraignment, and a date for a preliminary examination of not less than 5 days or more than 7 days after the date of the probable cause conference." However, a court may adjourn the preliminary examination "without the consent of the defendant or the prosecuting attorney *for good cause shown*." MCL 766.7 (emphasis added). In this case, the lower court docket entries show that Gray was arraigned on May 19, 2017, and the preliminary examination was timely scheduled for May 31, 2017. On that date, however, Gray was "not transported" to the court because he was hospitalized. As a result, the preliminary examination was adjourned until June 14, 2017, and the "21 days [was] waived." An adjournment of the preliminary examination so that a hospitalized defendant can be present is an adjournment for good cause. Gray is not entitled to relief on this claim.

## B. MISSING TRANSCRIPTS

Gray next contends that the record is inadequate for appellate review because he was denied a complete record of the proceedings below. Specifically, Gray asserts that he was denied transcripts of a May 31, 2017 probable cause hearing, and hearings on June 14 and 28, 2017, all of which occurred before the preliminary examination. However, the district court register of actions indicates that the "pre-exam conference" scheduled for May 31, 2017, was adjourned because Gray was in the hospital. Likewise, the register of actions does not list any hearings on June 14 or June 28, 2017. Because no hearings were held on those dates, no transcripts are available, and Gray is not entitled to relief on this basis.

## C. RIGHT OF SELF-REPRESENTATION

Gray next contends that the trial court violated his constitutional right of self-representation "when the court would not let him represent himself." The Sixth Amendment of the United States Constitution explicitly guarantees a defendant in a criminal case the right to the assistance of a defense lawyer and implicitly guarantees the right of self-representation. US Const, Am VI; *Faretta v California*, 422 US 806, 818; 95 S Ct 2525; 45 L Ed 2d 562 (1975). Any waiver of the right to a defense lawyer must be knowingly, voluntarily, and intelligently made by the defendant. *People v Russell*, 471 Mich 182, 188; 684 NW2d 745 (2004). If a defendant seeks to represent himself, the court must determine if:

> (1) the defendant's request is unequivocal, (2) the defendant is asserting the right knowingly, intelligently, and voluntarily through a colloquy advising the defendant of the dangers and disadvantages of self-representation, and (3) the defendant's self-representation will not disrupt, unduly inconvenience, and burden the court and the administration of the court's business. [*Russell*, 471 Mich at 190.]

Here, before the preliminary examination, Gray requested the court appoint him a new lawyer. The court denied the request, but offered to allow Gray to represent himself with his lawyer acting as standby counsel. Gray then sought to adjourn the examination so that he could "prepare." The court denied that motion after ascertaining that the prosecution was ready to proceed and the witnesses were waiting to testify. Gray responded by telling the court that he "would rather be in the bullpen," and he stated, unequivocally, that he was choosing "not to participate—period." Consequently, the record in this case does not support a finding that Gray unequivocally sought to represent himself and was denied that right. He instead unequivocally proclaimed that he was not going to participate. Further, during later proceedings in the case, he did not make any requests to represent himself. The trial court did not violate Gray's right of self-representation.

## D. INEFFECTIVE ASSISTANCE

Gray also argues that he was denied the effective assistance of a lawyer at trial and on appeal. Because Gray failed to raise any challenges to the effectiveness of his lawyers in the trial court in connection with a motion for a new trial or request for an evidentiary hearing, our review of this issue is limited to mistakes apparent on the record. *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012). "To demonstrate ineffective assistance of counsel, a defendant must show that his or her attorney's performance fell below an objective standard of reasonableness under prevailing professional norms and that this performance caused him or her prejudice." *People v Nix*, 301 Mich App 195, 207; 836 NW2d 224 (2013). "To demonstrate prejudice, a defendant must show the probability that, but for counsel's errors, the result of the proceedings would have been different." *Id*. The effective assistance of counsel is presumed, and the burden is on the defendant to establish otherwise. *People v LeBlanc*, 465 Mich 575, 578; 640 NW2d 246 (2002). "The defendant has the burden of establishing the factual predicate of his ineffective assistance claim." *People v Douglas*, 496 Mich 557, 592; 852 NW2d 587 (2014).

Gray first argues that his lawyer provided ineffective assistance by failing to challenge the authenticity of the surveillance video. Under MRE 901(a), "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." In accordance with MRE 901(b)(1), the testimony of a witness with knowledge that "a matter is what it is claimed to be" can be used for authentication or identification. In this case, both Latania and the responding police officer testified that Latania turned over a copy of the footage from the home security cameras to the police. Latania identified the exhibit as the video footage from Erwin's home security cameras on the day of the incident. As the video was played at trial, Latania identified the rooms in the house, the people depicted in the video—herself, Erwin, and Gray, and explained what was happening. Thus, the authenticity requirements were satisfied, and Gray's lawyer was not ineffective for failing to advance a meritless position. See *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

Gray next argues that his lawyer was ineffective for failing to impeach or cross-examine Latania at trial. The record, however, does not support this allegation of error. Gray's lawyer vigorously cross-examined Latania, resulting in testimony that her description of the events was inconsistent with the surveillance video and that she had memory issues, including forgetfulness. Also, during cross-examination, Gray's lawyer elicited from Latania that she was aware of the

home security system since 2015, and highlighted her direct examination testimony that Gray had previously lived in Erwin's house for eight months. On appeal, Gray does not identify additional inconsistencies or otherwise explain how his lawyer could have further undermined Latania's credibility, particularly in light of the evidence presented at trial. Thus, the record simply does not show that Gray's lawyer's impeachment efforts were objectively unreasonable or prejudicial.

Finally, Gray argues that his former appellate lawyer and current appellate lawyer were both ineffective for failing to obtain an expert witness to evaluate the surveillance video. He asserts that an expert would rebut the "expert testimony" presented by the prosecution and would determine if anything had been erased from the video. However, he has not pointed to any facts indicating that there is a reasonable probability that an expert, if retained, would have provided testimony favorable to his defense.[2] Further, the prosecution did not present any testimony from an expert witness, so there was no need to rebut "expert testimony." Accordingly, Gray cannot establish that his appellate lawyers' performance was deficient, nor can he establish that he was prejudiced by their decision not to retain an expert to evaluate the surveillance video.

We affirm Gray's convictions and sentences, but remand for the limited purpose of correcting the judgment of sentence in accordance with this opinion. We do not retain jurisdiction.

/s/ Jane M. Beckering
/s/ Stephen L. Borrello
/s/ Michael J. Kelly

---

[2] Gray was aware of the surveillance system before the robbery. And because he was present when the surveillance video was recorded, he would reasonably have personal knowledge if an event was missing from the recording. He has not alluded to any events that occurred that were not depicted on the video recording.